IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

Derrick Reed, on his own behalf
and on behalf of similarly situated persons,
Khaleelal Ali, Christopher Boyd, Corey
Dainty, Herman Davis, Valerie Langston
and Gary Roundtree,

        Plaintiffs,

        v.

Waukesha Engines and
Dresser, Inc.,

        Defendants.

Case No. _____

Judge_____

Magistrate Judge _____

## COMPLAINT

Derrick Reed individually and on behalf of similarly situated persons, and plaintiffs Khaleelah
Ali, Christopher Boyd, Corey Dainty, Herman Davis, Valerie Langston and Gary Roundtree
individually, complain of defendants as follows:

## NATURE OF THE ACTION

1.      Derrick Reed brings a class action against defendants under Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. seq. ("Title VII") and the Civil Rights Act

of 1866, 42 U.S.C. Sect. 1981, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981A,

seeking to redress unlawful and discriminatory employment practices (failure to hire on the basis

of race) and to remedy defendants' interference with the rights of plaintiffs and other similarly

situated persons to make, enter into and enforce contracts.

1

2.      Plaintiffs Ali, Boyd, Dainty, Davis, Langston and Roundtree bring claims under the Civil Rights Act of 1866, 42 U.S.C. Sect. 1981, as amended, seeking to redress unlawful and discriminatory employment practices on the basis of race and to remedy defendants' interference with the rights of plaintiffs to make, enter into and enforce contracts.

3.      Plaintiffs further allege that defendants have engaged in a general and pervasive corporate policy and pattern and practice of discrimination against African-Americans in employment at their Waukesha, Wisconsin facility. Defendants' conduct as complained of herein constitutes intentional race discrimination. Defendants' practices as complained of herein with respect to hiring also have an unlawful discriminatory disparate impact on African-Americans.

4.      Plaintiffs demand trial by jury on all counts and claims for which a jury is authorized.

## JURISDICTION AND VENUE

5.      This court has jurisdiction pursuant to 28 U.S.C. §§1331, 1337 and 1343.

6.      Venue is proper because the unlawful conduct alleged herein was committed and continues to occur within the boundaries of the Eastern District of Wisconsin.

7.      Plaintiff Derrick Reed is an African-American citizen of the United States who resides in Milwaukee County, Wisconsin.

8.      Plaintiff Khaleelah Ali is an African-American citizen of the United States who resides in Milwaukee County, Wisconsin.

9.      Plaintiff Christopher Boyd is an African-American citizen of the United States who resides in Rock County, Wisconsin.

2

10. Corey Dainty is an African-American citizen of the United States who resides in Winnebago County, Illinois.

11. Herman Davis is an African-American citizen of the United States who resides in Milwaukee County, Wisconsin.

12. Gary Roundtree is an African-American citizen of the United States who resides in Washington County, Wisconsin.

13. Defendant Waukesha Engines (also known as Dresser Waukesha) is owned by and a business unit of Dresser, Inc., doing business in the State of Wisconsin and the City of Waukesha, Wisconsin.

14. Defendant Dresser, Inc., based in Addison, Texas, owns and operates Waukesha Engines and thus is doing business in the State of Wisconsin and the City of Waukesha, Wisconsin, in the Eastern District of Wisconsin.

## BACKGROUND

15. Dresser Waukesha ("Waukesha Engines") manufactures large, spark-ignited gaseous-fueled reciprocating engines. It also packages Enginator engine-driven generator sets. These products are widely used in field gas compression, power generation and mechanical drive applications. Waukesha Engines employs at least 1,000 employees.

16. Dresser, Inc. ("Dresser") has 6,000 employees around the world, 12,000-plus customers and a sales presence in 100 countries. Dresser appears to operate through five business units, including Waukesha Engines.

17. For many years Waukesha Engines has engaged in a pervasive company-wide pattern and practice of discrimination against African-Americans with respect to hiring,

3

promotions, transfers, pay, terms and conditions of employment, discipline and work environment. African-Americans are severely under-represented in Waukesha Engines' management and supervisory levels. Each plaintiff asserts a claim of a pervasive company-wide pattern and practice race discrimination and each plaintiff seeks injunctive relief to eradicate company-wide discriminatory practices, regardless of whether a hiring class is certified. Waukesha Engines' unlawful pattern of conduct has adversely affected all the plaintiffs.

18.     At all relevant times, Human Resources and personnel functions have been implemented through a central Human Resources Department at the Waukesha Engines location.

19.     At all relevant times, vacant positions within Waukesha Engines, with the exception of working leader, are required to be centrally posted and purportedly held out to be open to all qualified Waukesha Engines employees. At all relevant times, Waukesha Engines has purportedly had a policy of filling vacant positions by promoting from within the ranks of current employees.

20.     The criteria used by defendants in determining who to hire or promote are needlessly subjective and infected with racial bias.

21.     The criteria used by defendants in determining the compensation of employees are needlessly subjective and infected with racial bias.

22.     The race discrimination claims of the individual plaintiffs are based on disparate treatment. The race discrimination claims of plaintiff Reed and the class (hiring discrimination) are based on both disparate treatment and disparate impact theories.

23.     The discriminatory conduct against African-Americans that defendants have engaged in includes, but is not limited to the following:

4

a) defendants have failed to hire African-American applicants for employment because of their race;

b) defendants have discriminated against African-American employees by initially hiring them for entry level jobs while hiring similarly situated white employees into more desirable positions;

c) defendants have paid lower wages to African-American employees than to white employees of comparable skill and experience;

d) defendants have denied promotions to qualified African-American employees because of their race;

e) defendants have applied their skills matrix and skill set assessment mechanisms in a manner that has resulted in delaying raises paid to African-American employees;

f) Defendants have denied African-American employees discretionary overtime and corresponding pay, whereas white employees are invited and afforded the opportunity to work overtime hours;

g) defendants have denied training and educational opportunities to African-American employees that are provided to white employees;

h) defendants have failed to investigate or act upon legitimate complaints about discrimination raised by African-American employees;

i) defendants have discriminated against African-American employees in terms of job perquisites afforded to white employees, such as the special consideration afforded friends, children and relatives of white workers seeking employment with defendants;

j) defendants have discriminated against African-American employees with respect to transfers to more desirable shifts or departments within the company;

k) defendants have failed to allow African-American employees the same opportunities as white employees to train on and operate higher level machines requiring more skills and leading to better job assignments and pay;

l) defendants have engaged in a practice of hiring, "mentoring" and promoting friends and relatives of white supervisors and managers, who are less

5

experienced and less qualified than African-American applicants and employees, which perpetuates a white work force and the absence of African-Americans in supervisory and management jobs;

m) white employees are exclusively promoted to unposted higher paying "working group leader" positions;

n) neither diversity nor cultural sensitivity training were provided for the employees at the Waukesha Engines plant;

o) defendants have not employed any African-American females in the shop (including assembly and manufacturing);

p) defendants have maintained several all white departments;

q) defendants' work force is one to two percent African-Americans, and defendants have knowingly tolerated and furthered a workforce that markedly fails to reflect diversity and is materially inconsistent with the diversity of the available labor market pool.

24. The racially motivated unlawful conduct and discriminatory policies and practices complained of herein constitute a pattern of continuous and ongoing conduct.

## DEFENDANTS' CONDUCT TOWARDS THE PLAINTIFFS

### A. DERRICK REED

25. Derrick Reed is an experienced and well-qualified machinist, including qualified in CNC machining.

26. In November, 2007, Reed applied for an open, posted lap over machinist job at Waukesha Engines, for which he was qualified.

27. Previously, in September 2007, Reed applied to Waukesha Engines for a CNC machinist job for which he was qualified. Defendants rejected Reed on both occasions based on his race. On each occasion, a white applicant was hired.

6

28. In addition, since he first applied, there have been additional open jobs at Waukesha Engines for which Reed was qualified, and Waukesha Engines was aware of his application and interest, but Waukesha Engines has failed and refused to hire Reed.

29. Plaintiff Reed duly filed a Charge of Discrimination under Title VII on August 6, 2008 with the United States Equal Employment Opportunity Commission ("EEOC") and, less than 90 days before the filing of this Complaint, received a Right To Sue Letter dated August 26, 2008, attached hereto as Exhibit A. Plaintiff Reed also brings a claim under 42 U.S.C. §1981.

## B. KHALEELAH ALI

30. Khaleelah Ali was hired by Waukesha Engines on October 2, 2006 as a Human Resources Assistant.

31. Defendants paid Ali a discriminatory starting salary that was lower than similarly situated non-minority employees, and failed to appropriately increase Ali's pay in a timely fashion, a fact admitted to Ali. Compensation decisions in February 2007 and April 2008 were also discriminatory.

32. Ali was subjected to discriminatory terms and conditions of employment. Ali was required to perform greater job duties than similarly situated white employees. Management failed to support her when white coworkers subjected Ali to unwarranted and critical e-mails. The Training Manager in Ali's department repeatedly referred to Ali as "girl," mimicking the Training Manager's perception of African-American culture. Ali was subject to undue criticism and scrutiny and was treated in an inhospitable manner because of her race.

33. During the course of her employment with defendants, Ali was also denied training and advancement opportunities that were provided to non-minority employees. In August 2007,

7

Ali was denied a promotion to Human Resources Administrator, a job title and grade created without posting for a less qualified white applicant. In October, 2007, defendants also provided a less qualified white employee, who did not have a high school diploma or GED, special consideration and a promotion to an HRMS Specialist position, which Ali was not offered. In late April or May, 2008, Ali applied for the job of HRMS Payroll Administrator, which would have been a promotion. After her supervisor, Jim Pachmayer, learned of her interest in the position, Ali was denied an interview for the job, and denied the promotion. Ali resigned from Waukesha Engines in June, 2008.

## C. CHRISTOPHER BOYD

34.     Christopher Boyd was hired by defendants on February 12, 2007, as a "Snagger" in the Fabrication area. His job entails testing, deburring and clean finishing 2,000 to 3,000 parts per day. Boyd's skills were greater than the job in which he was initially placed, but he was promised that after 90 days, it would be possible for him to move around.

35.     Due to discriminatory application of the Skills Matrix mechanism, Boyd's starting pay was 25% of his grade, which remained the same for approximately one year. During this time, Boyd was told he was required to learn skills not applicable to his job, but then was denied the opportunity to learn them (e.g. CNC-related training).

36.     Similarly situated white employees who were hired after Boyd were not required to undergo this additional training in order to complete their Skills Matrix. Similarly situated white employees with less seniority received a raise sooner than Boyd. In July or August of 2007, Boyd applied for a job as a tube bender, which was a promotion and would have led to further training,

8

education and promotions.  After Boyd applied, he was told the job was "eliminated."  However, the job was re-posted later.

37.     Boyd has been subjected to undue scrutiny regarding his training and job duties.

## D. COREY DAINTY

38.     Corey Dainty was hired by defendants on June 18, 2007 as an Assembly Supervisor.  Dainty is the first African-American supervisor in the history of Waukesha Engines.

39.     Dainty's starting pay was less than similarly situated white employees with comparable experience and qualifications, and defendants have failed to increase Dainty's pay commensurate with the pay of similarly situated white employees.

40.     Dainty was ostracized and experienced hostility as an African-American supervisor and employee.  Three to four months after he started, he requested that the company provide cultural sensitivity training, but defendants have failed to do so.

41.     Dainty has been denied appropriate training regarding company procedures, which other non-African-American supervisors receive.  In April 2007, Dainty applied for a promotion to Quality Supervisor.  Defendants utilize a procedure whereby an employee's supervisor must sign the application for promotion in order for it to be valid.  For discriminatory reasons, Dainty's supervisor blocked his application so that it was never received by the hiring manager.  When Dainty complained to Human Resources, he was told he was denied the job due to a "glitch" in the system: a white applicant from outside the company was then hired over Dainty.

42.     Defendant failed to take appropriate action and failed to support Dainty when white subordinate employees threatened and screamed at him in front of others, disrespecting his position and authority because of his race.

9

43. Dainty has been singled out for unwarranted criticism by management.

44. Dainty complained to defendants about race discrimination towards him on more than one occasion, but defendants failed to investigate or document his complaints. Instead, Dainty has been subjected to retaliation in that, following his complaints, he has been subjected to unwarranted scrutiny, criticism and discipline.

45. On August 1, 2008, Dainty was suspended without pay as a result of conduct of other employees in placing an inappropriate compilation of parts in the shape of a person under the desk of another supervisor. Dainty was not aware of this action. Dainty was allegedly disciplined because he should have been aware of the item under the other supervisor's desk and he should have allegedly disciplined the (unknown) employees who put it there. In response to this unwarranted discipline, which was harsher than discipline given to white employees when they actually deserve it, Dainty gave a written complaint to defendants about the incident being race discrimination, including the following: "This is not the first time I have raised this, though nothing effective has been done. I've asked in the past for what I believe to be racially motivated behavior to be documented and it's never been done." Dainty received an unsatisfactory letter in response dated August 8, 2008 from Vice President of Human Resources, Mark Fryer, limited to the August 1 incident only, and stating that the reasons for his discipline had nothing to do with race. Defendants failed to adequately investigate or to follow up on the broader, historical discrimination issues raised in Dainty's complaint memo.

46. Following the August 2008 discipline incident, a mocking screen saver targeting Dainty was displayed in his work area, but appropriate action by management was not taken in response. Also following this incident, Dainty discovered a cartoon in his desk drawer depicting

10

the hanging by noose of a workers' organizer with the words "You lost your power." When Dainty brought the offensive and threatening noose cartoon to the attention of management, nothing was done because management said (ironically) they would never figure out who did it. Defendants failed to take appropriate remedial measures in response to the noose cartoon, including fully investigating, communicating to the work force that such "cartoons" are inappropriate, instituting sensitivity or diversity training, or any taking other measures.

47.     Dainty has continued to receive unwarranted criticism and lack of management support.

### E. **HERMAN DAVIS**

48.     Herman Davis was hired by Waukesha Engines on February 5, 2006 as a Lapper, and is responsible for cleaning, smoothing, sanding and checking final dimensions of parts manufactured at Waukesha Engines. His prior work experience exceeded that required for the position for which he was hired.

49.     Davis has been denied training in balancing parts on the lapper machine for small crank shafts and on the Cincinnati Machine. Therefore, he has been denied the opportunity to complete 100% of the training for his skill set. Similarly situated white employees were afforded this training and thus were eligible for earlier raises and earlier qualification in 100% of their skill set.

50.     As a result of being denied training on the Cincinnati Machine, Davis was ineligible to work overtime on that machine, which would have been consistently available for Davis to work, up to 16 hours per week, for approximately one and a half years. Similarly situated white employees were eligible for and able to work overtime instead of Davis.

11

## F. <u>VALERIE LANGSTON</u>

51.     Valerie Langston was hired by Waukesha Engines in 1994 as a draftsperson in the Engineering Department. She is the only African-American employee in the Engineering Department. Her current job title is Product Designer II.. The current job duties include processing engineering changes by revising parts, systems and sub-systems for existing and new product lines. Langston is highly qualified for her job and meets or exceeds all of her employer's legitimate job related expectations.

52.     Lesser qualified employees in the position of Product Designer II who are not African-American have received unposted promotions to the position of Senior Product Designer I, and despite her qualifications and experience Waukesha Engines failed to consider Langston for unposted promotion to the position of Senior Product Designer I, notwithstanding the availability of additional open positions for Senior Product Designer I.   Unlike her similarly situated non-African-American coworkers, Langston was later required to apply for the available posted positions of Senior Product Designer I.  Throughout her employment at Waukesha Engines, Langston has not been provided with the training and advancement opportunities that were provided to non-African-American employees in the Engineering Department. As of this date, Langston remains a Senior Product Designer I.

53.     Upon information and belief, Waukesha Engines has paid a higher hourly rate to less qualified non-African-American employees in the position of Product Designer II than it pays to  Langston.

54.     Langston's non-African-American coworkers are offered and afforded greater opportunities for over-time work than she is.

12

55. Langston has been subjected to work place isolation by her supervisor and co-workers and her supervisor provides her with far less support than is provided to similarly situated non-African-American employees.

## G. GARY ROUNDTREE

56. Gary Roundtree was hired by Waukesha Engines on February 18, 1997 as a Machinist. There were four African-Americans employed by Waukesha Engines at the time. Roundtree currently holds the job of Machinist - CNC Operator, Grade 6. During the course of his employment with Waukesha Engines, Roundtree was denied training, overtime and raises due to his race. Roundtree repeatedly complained to management and to Human Resources about race discrimination at Waukesha Engines, including to the current Vice President of Human Resources, Mark Fryer. Roundtree questioned why there were only 1% minorities at the plant and why there was no diversity training provided at the plant. He received no meaningful response and nothing was or has been done in response. In October 2004, Roundtree was required to present a certificate for a CNC position in order to be placed in that position. Roundtree's white counterparts were not required to present a certificate when being placed in such positions. While Roundtree received the CNC position, defendant failed to compensate him in the same manner as his white counterparts were compensated when receiving similar positions. Defendant withheld Roundtree's wage increase for six months whereas Roundtree's white counterparts' wage increases were not delayed. Defendant also forced Roundtree to work on a less desirable shift.

13

# COUNT I

## Section 1981 - Race Discrimination in Hiring and Recruitment

57. Plaintiff Reed incorporates and realleges Paragraphs 1 through 56 of this Class Action Complaint as if set forth herein.

58. Plaintiff Reed brings this Count individually and as a class action against the defendants pursuant to Fed.R.Civ.P. 23(a), and Rule 23(b)(2) and/or(b)(3). The class consists of all African-American persons who have applied and been rejected, have been interested in applying, or who have been deterred from applying for positions with Waukesha Engines within the applicable limitations period.

59. The aforementioned conduct of defendants was racially motivated and constitutes a pattern and practice of discrimination against plaintiff Reed and the class in connection with hiring and recruitment for positions in violation of 42 U.S.C. Sect. 1981. Highly qualified African-Americans are repeatedly denied positions.

60. Defendants engage in the practice of word-of-mouth recruiting and referral, and the practice of hiring friends and relatives of its overwhelmingly white workforce. These practices are engaged in by defendants with the knowledge and intent of discriminating against African-Americans. Prospective employees referred or recruited by the few African-American employees of Waukesha Engines are not hired at the same rate as those referred by white employees. In addition, defendants' conduct has had the effect of deterring African-Americans from applying for jobs with Waukesha Engines.

61. The aforementioned conduct has resulted in damages to plaintiff and the class including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation and

14

embarrassment. The foregoing acts of defendants, their agents and employees, were deliberate, intentional, willful, wanton and malicious and taken with reckless disregard to plaintiff's civil rights, thereby entitling plaintiff and the class to punitive damages.

62.     The members of this class are so numerous that joinder of all class members is impracticable. While the exact number of class members can only be ascertained through discovery, plaintiffs allege on information and belief that there are in excess of 75 members of the class.

63.     There are questions of law or fact common to the class related to defendants' discriminatory failure to hire plaintiff and members of the class, including, inter alia, whether defendants' company-wide hiring procedures and practices discriminated against African-American persons; whether defendants' conduct was carried out with discriminatory intent; whether defendants have common defenses; and whether injunctive relief is an appropriate remedy for defendants' conduct and what injunctive relief should be ordered.

64.     The claims of the representative plaintiff are typical of the claims of the class members inasmuch as they arise from the same course of conduct and are based upon the same legal theory.

65.     The representative plaintiff and counsel will fairly and adequately protect the interests of the class. The representative plaintiff does not have interests which are antagonistic to or in conflict with the class. The representative plaintiff has retained counsel who are competent and experienced in employment discrimination and class litigation.

66.     The class can be properly certified under Fed.R.Civ.P. 23(b)(2) in that defendants have acted or refused to act on grounds generally applicable to the class, thereby making

Case 2:08-cv-00818-LA   Filed 09/29/08   Page 15 of 31   Document 1

appropriate injunctive relief or corresponding declaratory relief with respect to the class as a whole.

67.     The class can also be properly certified under Fed.R.Civ.P. 23(b)(3) in that common questions predominate over any questions affecting only individual class members.

68.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  There are no other considerations that would militate against the maintenance of this case as a class action.

69.     In the event that a plaintiff class is not certified as requested in this Count, the Court should still enter systemic injunctive relief to address the unlawful conduct complained of herein.

## PRAYER FOR RELIEF

70.     With respect to Count I, plaintiff Derrick Reed respectfully requests that this Court:

    a.    Determine that this claim should proceed as a class action claim on behalf of the class defined herein;

    b.    Enter a declaratory judgment finding and declaring that defendants have discriminated against the representative plaintiff and the class in violation of 42 U.S.C. §1981;

    c.    Grant a permanent injunction enjoining defendants, their officers, successors, assigns and all persons in active concert or participating with them, from engaging in any conduct which discriminates on the basis of race;

    d.    Order defendants to make whole the representative plaintiff and class members by providing back pay and prejudgment interest in amounts to be proven at trial and other affirmative relief necessary to eradicate the effects of defendants' unlawful employment practices including, but not limited to, rightful place reinstatement;

16

e.      Order defendants to make whole the representative plaintiff and class members by providing compensation for past and future pecuniary losses resulting from the unlawful practices alleged herein;

f.      Order defendants to make whole the representative plaintiff and class members by providing compensation for past and future non-pecuniary losses resulting from the unlawful conduct alleged herein, including humiliation, in amounts to be determined at trial;

g.      Order defendants to pay to the representative plaintiff and class members punitive damages for the malicious and reckless conduct alleged herein in amounts to be determined at trial;

h.      Award the representative plaintiff and the class attorney's fees and costs incurred in this action; and

i.      Grant such other and further relief as this Court deems appropriate.

## COUNT II

### Title VII - Discrimination in hiring and recruitment

71.      Plaintiff Derrick Reed incorporates and realleges Paragraphs 1 through 56 of this Class Action Complaint as if set forth herein.

72.      Plaintiff Reed brings this Count individually and as a class action against the defendants pursuant to Fed.R.Civ.P. 23(a), and Rule 23(b)(2) and/or(b)(3). The class consists of all African-American persons who have applied and been rejected, have been interested in applying, or who have been deterred from applying for positions with Waukesha Engines within the applicable limitations period.

73.      The aforementioned conduct of defendants was racially motivated and constitutes a pattern and practice of discrimination against plaintiff Reed and other African-Americans in connection with hiring and recruitment for positions in violation of Title VII of the Civil Rights Act, as amended.

17

74. Highly qualified African-Americans have been repeatedly denied positions. Defendants engage in the practice of word-of-mouth recruiting and referral, and the practice of hiring friends and relatives of its overwhelmingly white workforce. These practices are engaged in by defendants with the knowledge and intent of discriminating against African-Americans. Prospective employees referred or recruited by the few African-American employees of Waukesha Engines are not hired at the same rate as those referred by white employees. In addition, there are African-Americans who are deterred from applying for jobs with Waukesha Engines.

75. Defendants' hiring and recruitment practices also have had a disparate impact on prospective African-American employees and applicants and are not job related, in violation of Title VII.

76. The aforementioned conduct has resulted in damages to plaintiff and the class including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation and embarrassment. The foregoing acts of defendants, their agents and employees, were deliberate, intentional, willful, wanton and malicious and taken with reckless disregard to plaintiffs' civil rights, thereby entitling plaintiff and the class to punitive damages.

77. The members of this class are so numerous that joinder of all class members is impracticable. While the exact number of class members can only be ascertained through discovery, plaintiffs allege on information and belief that there are in excess of 75 members of the class.

78. There are questions of law or fact common to the class related to defendants' discriminatory failure to hire plaintiff and members of the class, including, inter alia, whether defendants' company-wide hiring procedures and practices discriminated against African-

18

American persons; whether defendants' conduct was carried out with discriminatory intent; whether defendants' hiring and recruitment practices had an adverse impact on plaintiff and members of the class; whether defendants' recruitment and hiring practices are job-related or justified by business necessity; whether defendants have common defenses; and whether injunctive relief is an appropriate remedy for defendants' conduct.

79.     The claims of the representative plaintiff are typical of the claims of the class members inasmuch as they arise from the same course of conduct and are based upon the same legal theory.

80.     The representative plaintiff and counsel will fairly and adequately protect the interests of the class.  The representative plaintiff does not have interests which are antagonistic to or in conflict with the  class.  The representative plaintiff has retained counsel who are competent and experienced in employment discrimination and class litigation.

81.     The class can be properly certified under Fed.R.Civ.P. 23(b)(2) in that defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate injunctive relief or corresponding declaratory relief with respect to the class as a whole.

82.     The class can also be properly certified under Fed.R.Civ.P. 23(b)(3) in that common questions predominate over any questions affecting only individual class members.

83.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  There are no other considerations that would militate against the maintenance of this case as a class action.

19

84.     In the event that a plaintiff class is not certified as requested in this Count, the

Court should still enter systemic injunctive relief to address the unlawful conduct complained of

herein.

## PRAYER FOR RELIEF

85.     With respect to Count II plaintiff Derrick Reed respectfully requests that this

Court:

a.      Determine that this claim should proceed as a class action claim as defined herein and enter judgment finding and declaring that defendants have discriminated against the representative plaintiff and the class in violation of Title VII of the Civil Rights Act of 1964, as amended;

b.      Grant a permanent injunction enjoining defendants, their officers, successors, assigns and all persons in active concert or participating with them, from engaging in any employment practice with respect to hiring and recruitment which discriminates on the basis of race;

c.      Order defendants to make whole plaintiff and members of the plaintiff class by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above;

d.      Order defendants to make whole plaintiff and members of the plaintiff class by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including humiliation, emotional distress and embarrassment in amounts to be determined at trial;

e.      Order defendants to pay to plaintiff and members of the plaintiff class punitive damages for their malicious and reckless conduct described above in amounts to be determined at trial;

f.      Grant such other and further relief as this Court deems necessary and proper; and

g.      Award plaintiffs' attorneys' fees and costs in this action.

20

## COUNT III

### §1981 -Khaleela Ali

86.     Plaintiff Ali incorporates and realleges Paragraphs 1 through 56 of this Complaint as if set forth herein.

87.     The aforementioned conduct of defendants was racially motivated and constitutes discrimination against Ali based on race in compensation, denial of promotions and as to the terms and conditions of her employment all in violation of 42 U.S.C. §1981. The aforementioned conduct also constitutes a pattern and practice of discrimination against African-Americans in connection with compensation to employees, promotions and the terms and conditions of employment, in violation of 42 U.S.C. §1981.

88.     The aforementioned conduct has resulted in damages to plaintiff including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation and embarrassment. The foregoing acts of defendants, their agents and employees, were deliberate, intentional, willful, wanton and malicious and taken with reckless disregard to plaintiff's civil rights, thereby entitling plaintiff to punitive damages.

### PRAYER FOR RELIEF

89.     With respect to Count III, plaintiff Khaleelah Ali respectfully requests that this Court:

a.      Enter a declaratory judgment finding and declaring that defendants have discriminated against the plaintiff in violation of 42 U.S.C. §1981;

b       Grant a permanent injunction enjoining defendants, their officers, successors, assigns and all persons in active concert or participating with

21

them, from engaging in any conduct which discriminates on the basis of race;

c.   Order defendants to make whole the plaintiff by providing back pay and prejudgment interest in amounts to be proven at trial and other affirmative relief necessary to eradicate the effects of defendants' unlawful employment practices;

d.   Order defendants to make whole the plaintiff by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices alleged herein;

e.   Order defendants to make whole the plaintiff by providing compensation for past and future non-pecuniary losses resulting from the unlawful conduct alleged herein, including humiliation, in amounts to be determined at trial;

f.   Order defendants to pay to the plaintiff punitive damages for the malicious and reckless conduct alleged herein in amounts to be determined at trial;

g.   Award the plaintiff attorney's fees and costs incurred in this action; and

h.   Grant such other and further relief as this Court deems appropriate.

## COUNT IV

### §1981 -Christopher Boyd

90.   Plaintiff Boyd incorporates and realleges Paragraphs 1 through 56 of this Complaint as if set forth herein.

91.   The aforementioned conduct of defendants was racially motivated and constitutes discrimination against Boyd based on race in compensation, denial of promotions and as to the terms and conditions of employment, all in violation of 42 U.S.C. §1981. The aforementioned conduct also constitutes a pattern and practice of discrimination against African-Americans in connection with compensation to employees, promotions and the terms and conditions of employment, in violation of 42 U.S.C. §1981.

22

92. The aforementioned conduct has resulted in damages to plaintiff including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation and embarrassment. The foregoing acts of defendants, their agents and employees, were deliberate, intentional, willful, wanton and malicious and taken with reckless disregard to plaintiff's civil rights, thereby entitling plaintiff to punitive damages.

## PRAYER FOR RELIEF

93. With respect to Count IV, plaintiff Christopher Boyd respectfully requests that this Court:

    a.    Enter a declaratory judgment finding and declaring that defendants have discriminated against the plaintiff in violation of 42 U.S.C. §1981;

    b    Grant a permanent injunction enjoining defendants, their officers, successors, assigns and all persons in active concert or participating with them, from engaging in any conduct which discriminates on the basis of race;

    c.    Order defendants to make whole the plaintiff by providing back pay and prejudgment interest in amounts to be proven at trial and other affirmative relief necessary to eradicate the effects of defendants' unlawful employment practices;

    d.    Order defendants to make whole the plaintiff by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices alleged herein;

    e.    Order defendants to make whole the plaintiff by providing compensation for past and future non-pecuniary losses resulting from the unlawful conduct alleged herein, including humiliation, in amounts to be determined at trial;

    f.    Order defendants to pay to the plaintiff punitive damages for the malicious and reckless conduct alleged herein in amounts to be determined at trial;

    g.    Award the plaintiff attorney's fees and costs incurred in this action; and

23

h.    Grant such other and further relief as this Court deems appropriate.

## COUNT V

### §1981 -Corey Dainty

94.    Plaintiff Dainty incorporates and realleges Paragraphs 1 through 56 of this Complaint as if set forth herein.

95.    The aforementioned conduct of defendants was racially motivated and constitutes discrimination against Dainty based on race in compensation, denial of promotions, the terms and conditions of employment, and retaliation, all in violation of 42 U.S.C. §1981.  The aforementioned conduct also constitutes a pattern and practice of discrimination against African-Americans in connection with compensation to employees, promotions and the terms and conditions of employment, in violation of 42 U.S.C. §1981.

96.    The aforementioned conduct has resulted in damages to plaintiff including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation and embarrassment.  The foregoing acts of defendants, their agents and employees, were deliberate, intentional, willful, wanton and malicious and taken with reckless disregard to plaintiff's civil rights, thereby entitling plaintiff to punitive damages.

### PRAYER FOR RELIEF

97.    With respect to Count V, plaintiff Corey Dainty respectfully requests that this Court:

a.    Enter a declaratory judgment finding and declaring that defendants have discriminated against the plaintiff in violation of 42 U.S.C. §1981;

24

b      Grant a permanent injunction enjoining defendants, their officers, successors, assigns and all persons in active concert or participating with them, from engaging in any conduct which discriminates on the basis of race;

c.      Order defendants to make whole the plaintiff by providing back pay and prejudgment interest in amounts to be proven at trial and other affirmative relief necessary to eradicate the effects of defendants' unlawful employment practices;

d.      Order defendants to make whole the plaintiff by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices alleged herein;

e.      Order defendants to make whole the plaintiff by providing compensation for past and future non-pecuniary losses resulting from the unlawful conduct alleged herein, including humiliation, in amounts to be determined at trial;

f.      Order defendants to pay to the plaintiff punitive damages for the malicious and reckless conduct alleged herein in amounts to be determined at trial;

g.      Award the plaintiff attorney's fees and costs incurred in this action; and

h.      Grant such other and further relief as this Court deems appropriate.

## COUNT VI

### §1981 -Herman Davis

98.      Plaintiff Davis incorporates and realleges Paragraphs 1 through 56 of this Complaint as if set forth herein.

99.      The aforementioned conduct of defendants was racially motivated and constitutes discrimination against Davis based on race in compensation, denial of promotions and as to the terms and conditions of employment, all in violation of 42 U.S.C. §1981. The aforementioned conduct also constitutes a pattern and practice of discrimination against African-

25

Americans in connection with compensation to employees, promotions and the terms and conditions of employment, in violation of 42 U.S.C. §1981.

100.    The aforementioned conduct has resulted in damages to plaintiff including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation and embarrassment. The foregoing acts of defendants, their agents and employees, were deliberate, intentional, willful, wanton and malicious and taken with reckless disregard to plaintiff's civil rights, thereby entitling plaintiff to punitive damages.

## PRAYER FOR RELIEF

101.    With respect to Count VI, plaintiff Herman Davis respectfully requests that this Court:

       a.    Enter a declaratory judgment finding and declaring that defendants have discriminated against the plaintiff in violation of 42 U.S.C. §1981;

       b    Grant a permanent injunction enjoining defendants, their officers, successors, assigns and all persons in active concert or participating with them, from engaging in any conduct which discriminates on the basis of race;

       c.    Order defendants to make whole the plaintiff by providing back pay and prejudgment interest in amounts to be proven at trial and other affirmative relief necessary to eradicate the effects of defendants' unlawful employment practices;

       d.    Order defendants to make whole the plaintiff by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices alleged herein;

       e.    Order defendants to make whole the plaintiff by providing compensation for past and future non-pecuniary losses resulting from the unlawful conduct alleged herein, including humiliation, in amounts to be determined at trial;

26

f.      Order defendants to pay to the plaintiff punitive damages for the malicious and reckless conduct alleged herein in amounts to be determined at trial;

g.      Award the plaintiff attorney's fees and costs incurred in this action; and

h.      Grant such other and further relief as this Court deems appropriate.

## COUNT VII

### §1981 -Valerie Langston

102.    Plaintiff Langston incorporates and realleges Paragraphs 1 through 56 of this Complaint as if set forth herein.

103.    The aforementioned conduct of defendants was racially motivated and constitutes discrimination against Langston based on race in compensation, denial of promotions and as to the terms and conditions of employment, all in violation of 42 U.S.C. §1981. The aforementioned conduct also constitutes a pattern and practice of discrimination against African-Americans in connection with compensation to employees, promotions and the terms and conditions of employment, in violation of 42 U.S.C. §1981.

104.    The aforementioned conduct has resulted in damages to plaintiff including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation and embarrassment. The foregoing acts of defendants, their agents and employees, were deliberate, intentional, willful, wanton and malicious and taken with reckless disregard to plaintiff's civil rights, thereby entitling plaintiff to punitive damages.

### PRAYER FOR RELIEF

105.    With respect to Count VII, plaintiff Valerie Langston respectfully requests that this Court:

27

a.       Enter a declaratory judgment finding and declaring that defendants have
         discriminated against the plaintiff in violation of 42 U.S.C. §1981;

b        Grant a permanent injunction enjoining defendants, their officers,
         successors, assigns and all persons in active concert or participating with
         them, from engaging in any conduct which discriminates on the basis of
         race;

c.       Order defendants to make whole the plaintiff by providing back pay and
         prejudgment interest in amounts to be proven at trial and other affirmative
         relief necessary to eradicate the effects of defendants' unlawful employment
         practices;

d.       Order defendants to make whole the plaintiff by providing compensation
         for past and future pecuniary losses resulting from the unlawful
         employment practices alleged herein;

e.       Order defendants to make whole the plaintiff by providing compensation
         for past and future non-pecuniary losses resulting from the unlawful
         conduct alleged herein, including humiliation, in amounts to be determined
         at trial;

f.       Order defendants to pay to the plaintiff punitive damages for the malicious
         and reckless conduct alleged herein in amounts to be determined at trial;

g.       Award the plaintiff attorney's fees and costs incurred in this action; and

h.       Grant such other and further relief as this Court deems appropriate.

## COUNT VIII

### §1981 -Gary Roundtree

106.    Plaintiff Roundtree incorporates and realleges Paragraphs 1 through 56 of
this Complaint as if set forth herein.

107.    The aforementioned conduct of defendants was racially motivated and
constitutes discrimination against Roundtree based on race in denial of promotion and as to the
terms and conditions of employment, all in violation of 42 U.S.C. §1981. The aforementioned

28

conduct also constitutes a pattern and practice of discrimination against African-Americans in connection with compensation to employees, promotions and the terms and conditions of employment, in violation of 42 U.S.C. §1981.

108.   The aforementioned conduct has resulted in damages to plaintiff including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation and embarrassment. The foregoing acts of defendants, their agents and employees, were deliberate, intentional, willful, wanton and malicious and taken with reckless disregard to plaintiff's civil rights, thereby entitling plaintiff to punitive damages.

## PRAYER FOR RELIEF

109.   With respect to Count VII, plaintiff Gary Roundtree respectfully requests that this Court:

a.   Enter a declaratory judgment finding and declaring that defendants have discriminated against the plaintiff in violation of 42 U.S.C. §1981;

b   Grant a permanent injunction enjoining defendants, their officers, successors, assigns and all persons in active concert or participating with them, from engaging in any conduct which discriminates on the basis of race;

c.   Order defendants to make whole the plaintiff by providing back pay and prejudgment interest in amounts to be proven at trial and other affirmative relief necessary to eradicate the effects of defendants' unlawful employment practices;

d.   Order defendants to make whole the plaintiff by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices alleged herein;

e.   Order defendants to make whole the plaintiff by providing compensation for past and future non-pecuniary losses resulting from the unlawful conduct alleged herein, including humiliation, in amounts to be determined at trial;

29

Dated: September 29th , 2008

Respectfully submitted,

s/ Peter G. Earle

_____

Peter G. Earle, WI SBN 1012176
Law Offices of Peter Earle, LLC
700 N. Water St., Suite 646
Milwaukee, WI 53202
414.276.0460 phone
414-276-1076 fax
peter@earle-law.com e-mail

s/ Jennifer K. Soule

_____

Jennifer K. Soule, IL SBN 06198467
Kelly K. Lambert, IL SBN 06201523
James G. Bradtke, IL SBN 06183694
Daniel R. McNeeley, IL SBN 06293352
Soule, Bradtke & Lambert
155 North Michigan Avenue
Suite 504
Chicago, IL 60601
312-616-4422 phone
312-616-4423 fax

30

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Derrick Reed**<br>5548 W. Roosevelt Road<br>Milwaukee, WI 53216 | From: **Milwaukee Area Office**<br>310 West Wisconsin Ave<br>Suite 800<br>Milwaukee, WI 53203 |

☐ On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **443-2008-02817C** | **Marian L. Drew,**<br>**Intake Supervisor** | **(414) 297-1112** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☐ The EEOC is terminating its processing of this charge.

☒ **The EEOC will continue to process this charge.**

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]*

**John P. Rowe,**
**Director**

AUG 2 6 2008

*(Date Mailed)*

Enclosures(s)

cc: **WAUKESHA ENGINES**
Attn: Human Resources Manager
1101 West St. Paul Avenue
Waukesha, WI 53188

**Jennifer K. Soule, Esq.**
Soul Bradtke & Lambert
155 N. Michigan Avenue, Suite 504
Chicago, IL 60601