# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

Derrick Reed, Willie Murray, Torrance
Nealon, Monique Jackson, Sandra Solomon,
and Wiley Mallette on their own behalf and
on behalf of similarly situated persons,
Christopher Boyd, Herman Davis and Gary
Roundtree, individually,

    Plaintiffs,

    v.

Dresser, Inc.,

    Defendant.

Case No. 08-C-0818

Judge Lynn Adelman

Magistrate Judge Patrice J. Gorence

Jury Trial Demanded

## PLAINTIFFS' FOURTH AMENDED COMPLAINT

Derrick Reed, Willie Murray, Torrance Nealon, Monique Jackson, Sandra Solomon, and

Wiley Mallette individually and on behalf of similarly situated persons, and Christopher Boyd,

Herman Davis and Gary Roundtree, individually, complain of defendant as follows:

## NATURE OF THE ACTION

1. Derrick Reed brings class action claims against defendant under Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. seq. ("Title VII") and the Civil Rights Act of

1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981A, seeking

to redress unlawful and discriminatory employment practices (failure to hire on the basis of race) and

to remedy defendant's interference with the rights of plaintiff and other similarly situated persons to

make, enter into and enforce contracts. Willie Murray, Torrance Nealon, Monique Jackson, Sandra

Solomon, and Wiley Mallette bring class action claims against defendant under the Civil Rights Act

of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981A, seeking

to remedy defendant's interference with the right of plaintiffs and other similarly situated persons to make, enter into and enforce contracts.

2.      Plaintiffs, Boyd, Davis, and Roundtree bring claims under the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended, seeking to redress unlawful and discriminatory employment practices on the basis of race and to remedy defendant's interference with the rights of plaintiffs to make, enter into and enforce contracts.

3.      Plaintiffs further allege that defendant has engaged in a general and pervasive policy and pattern and practice of discrimination against African-Americans in employment at its Waukesha, Wisconsin facilities ("Dresser Waukesha"). Defendant's conduct as complained of herein constitutes intentional race discrimination. Defendant's practices as complained of herein with respect to recruitment and hiring also have an unlawful discriminatory disparate impact on African-Americans.

4.      Plaintiffs demand trial by jury on all counts and claims for which a jury is authorized.

## JURISDICTION AND VENUE

5.      This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337 and 1343.

6.      Venue is proper because the unlawful conduct alleged herein was committed and continues to occur within the boundaries of the Eastern District of Wisconsin.

7.      Plaintiff Derrick Reed is an African-American citizen of the United States who resides in Milwaukee County, Wisconsin.

8.      Plaintiff Willie Murray is an African-American citizen of the United States who resides in Polk County, Iowa.

9.      Plaintiff Torrance Nealon is an African-American citizen of the United States who resides in Winnebago County, Illinois.

2

10.     Plaintiff Christopher Boyd is an African-American citizen of the United States who resides in Rock County, Wisconsin.

11.     Plaintiff Herman Davis is an African-American citizen of the United States who resides in Milwaukee County, Wisconsin.

12.     Plaintiff Gary Roundtree is an African-American citizen of the United States who resides in Washington County, Wisconsin.

13.     Plaintiff Monique Jackson is an African-American citizen of the United States who resides in Milwaukee County, Wisconsin.

14.     Plaintiff Sandra Solomon is an African-American citizen of the United States who resides in Milwaukee County, Wisconsin.

15.     Plaintiff Wiley Mallette is an African-American citizen of the United States who resides in Milwaukee County, Wisconsin.

16.     Defendant Dresser, Inc., is based in Addison, Texas, owns and operates Dresser Waukesha, and thus transacts business in the State of Wisconsin and the City of Waukesha, Wisconsin, in the Eastern District of Wisconsin.

## BACKGROUND

17.     Dresser Waukesha manufactures large, spark-ignited gaseous-fueled reciprocating engines. It also packages Enginator engine-driven generator sets. These products are widely used in field gas compression, power generation and mechanical drive applications. Hundreds of persons are employed at the facilities of Dresser Waukesha.

3

18.     Dresser, Inc. ("Dresser" or "defendant") has 6,000 employees around the world, 12,000-plus customers and a sales presence in 100 countries.   Dresser operates through various business units, including Dresser Waukesha.

19.     The allegations of this complaint relate to the Dresser Waukesha business unit.  For many years there has been a pervasive company-wide pattern and practice of discrimination at Dresser Waukesha against African-Americans with respect to hiring, promotions, transfers, pay, terms and conditions of employment, discipline and work environment. African-Americans are severely under-represented in Dresser Waukesha's management and supervisory levels. Each plaintiff asserts a claim of a pervasive company-wide pattern and practice of race discrimination and each plaintiff seeks injunctive relief to eradicate company-wide discriminatory practices, regardless of whether a hiring class is certified.  Defendant's unlawful pattern of conduct with respect to its Dresser Waukesha facilities has adversely affected all the plaintiffs.

20.     At all relevant times, Human Resources and personnel functions have been implemented through a central Human Resources Department at the Dresser Waukesha location.

21.     The race discrimination claims of the individual plaintiffs are based on disparate treatment.  The race discrimination claims of the hiring class are based on both disparate treatment and disparate impact theories.

22.     The discriminatory conduct against African-Americans that defendant has engaged in at the Dresser Waukesha facilities includes, but is not limited to, the following:

           a.      Defendant has failed to hire African-American applicants for employment
                   because of their race;

4

b.      Defendant has discriminated against African-American employees by initially hiring them for entry level jobs while hiring similarly situated white employees into more desirable positions;

c.      Defendant has paid lower wages to African-American employees than to white employees of comparable skill and experience;

d.      Defendant has denied promotions to qualified African-American employees because of their race;

e.      Defendant has applied its skills matrix and skill set assessment mechanisms in a manner that has resulted in delaying raises paid to African-American employees;

f.      Defendant has denied African-American employees discretionary overtime and corresponding pay, whereas white employees are afforded the opportunity to work overtime hours;

g.      Defendant has denied training and educational opportunities to African-American employees that are provided to white employees;

h.      Defendant has failed to investigate or act upon legitimate complaints about discrimination raised by African-American employees;

I.      Defendant has discriminated against African-American employees and potential applicants in terms of job perquisites afforded to white employees, such as the special consideration afforded friends, children and relatives of white workers seeking employment with defendant;

j.      Defendant has employed criteria in connection with hiring, promotion and compensation decisions that are needlessly subjective and/or infected with racial bias;

k.      Defendant has discriminated against African-American employees with respect to transfers to more desirable shifts or departments within the company;

l.      Defendant has failed to allow African-American employees the same opportunities as white employees to train on and operate higher level machines requiring more skills and leading to better job assignments and pay;

m.      Defendant has engaged in a practice of hiring, "mentoring" and promoting friends and relatives of white supervisors and managers, who are less

5

experienced and less qualified than African-American applicants and employees, which perpetuates a white work force and the absence of African-Americans in supervisory and management jobs;

n. White employees are exclusively promoted to unposted higher paying "working group leader" positions;

o. Neither diversity nor cultural sensitivity training has been provided for the employees at the Dresser Waukesha plant;

p. Defendant has not employed any African-American females in the shop (including assembly and manufacturing);

q. Defendant has maintained several all white departments; and

r. Defendant's work force at the Dresser Waukesha facilities is one to two percent African-American, and defendant has knowingly tolerated and furthered a workforce that markedly fails to reflect diversity and is materially inconsistent with the diversity of the available labor market pool.

23. The defendant's pattern of discriminatory conduct with respect to its Dresser Waukesha workforce has adversely affected African-American employees in addition to the plaintiffs in this action, including, but not limited to, the following persons:

a. Khaleelah Ali. Ms Ali was hired by defendant as a Human Resources Assistant in 2006 and experienced discrimination throughout her employment with defendant. Ms. Ali was compensated less than similarly qualified non-minority employees, was denied training and advancement opportunities, and was passed over for promotions ultimately given to less qualified employees. Ms. Ali was also required to perform greater job duties than similarly situated white employees and was subjected to unwarranted criticism and racial taunting.

b. Valerie Langston. Ms. Langston was hired as a draftperson in 1994 and is the only African-American employee in the Engineering Department. Despite being qualified, Ms. Langston has not received unposted promotions received by white employees, and she has not been provided training, advancement and support opportunities provided to non-African-American employees in the Engineering Department. In November 2008, Ms. Langston was denied a promotion to a Senior Product Designer I position for which she was qualified. Ms. Langston has not received opportunities to work overtime that white

6

employees have received, and has been paid less than white employees who are not more qualified than her.

c.    Corey Dainty.  Mr. Dainty was hired by defendant as an Assembly Supervisor in June 2007.  He was paid less than white supervisors with the same or less experience.  During his tenure, Mr. Dainty was denied training needed to perform his job efficiently, received unwarranted criticism and poor performance evaluations, and was not supported by management when white employees engaged in insubordinate conduct towards him.  Mr. Dainty was discriminatorily denied a promotion to a quality supervisor position and was discriminatorily denied an open first shift supervisor position.  Mr. Dainty directly complained of racial discrimination to defendant, but his complaints were not reasonably investigated.  Mr. Dainty was ultimately terminated by defendant in June 2009, and his termination constituted both unlawful discrimination and retaliation for his efforts to assert protected rights.

24.    The racially motivated unlawful conduct and discriminatory policies and practices complained of herein constitute a pattern of continuous and ongoing conduct.

## DEFENDANT'S CONDUCT TOWARDS THE PLAINTIFFS

### A.  DERRICK REED

25.    Derrick Reed is an experienced and well-qualified machinist, and is qualified in CNC machining.

26.    In November 2007, Reed applied for an open, posted CNC machinist position at Dresser Waukesha, for which he was qualified.

27.    Previously, in October 2007, Reed applied to Dresser Waukesha for a lap-over machinist job for which he was qualified.  Defendant rejected Reed on both occasions based on his race.

28.    In addition, since he first applied at Dresser Waukesha, there have been additional open jobs at Dresser Waukesha for which Reed was qualified, and defendant was aware of his application and interest, but defendant has failed and refused to hire Reed.

7

29.     Plaintiff Reed filed a Charge of Discrimination under Title VII on August 6, 2008 with the United States Equal Employment Opportunity Commission ("EEOC") and, less than 90 days before the filing of the Complaint, received a Right To Sue Letter dated August 26, 2008, attached hereto as Exhibit A.  Plaintiff Reed also brings a claim under 42 U.S.C. § 1981.

### B.  WILLIE MURRAY

30.     Willie Murray is experienced and well-qualified with respect to manufacturing and assembly work.

31.     In 2007, Murray applied for an open assembly position at Dresser Waukesha for which he was qualified.  Murray was advised of the job opening by one of defendant's African-American employees, Corey Dainty.

32.     Murray was rejected for the position based on his race, African-American.

33.     Since his application at Dresser Waukesha, there have been other additional job openings at Dresser Waukesha for which Murray was qualified, and defendant was aware of his application and interest, but defendant has failed and refused to hire Murray.

### C.  TORRANCE NEALON

34.     Torrance Nealon is an experienced and well-qualified machinist, who has performed CNC machinist duties.

35.     In approximately October 2007, Nealon applied for an open CNC machinist position at Dresser Waukesha for which he was qualified.  Nealon was advised of the job opening by one of defendant's African-American employees, Corey Dainty.

36.     Nealon was rejected for the position based on his race, African-American.

8

37.     Since his application at Dresser Waukesha, there have been other additional job openings at Dresser Waukesha for which Nealon was qualified, and defendant was aware of his application and interest, but defendant has failed and refused to hire Nealon.

## D. MONIQUE JACKSON

38.     Monique Jackson is experienced and well-qualified with respect to administrative, office and support work.

39.     In 2008, Jackson applied for an open administrative assistant position at Dresser Waukesha that she was qualified for. Jackson become aware of the position because, at the time, she was working at the Dresser Waukesha facility as a temporary employee through an agency.

40.     Jackson was rejected for the position based on her race, African-American.

41.     Since her application at Dresser Waukesha, there have been additional job openings at Dresser Waukesha for which Jackson was qualified, and defendant was aware of her prior application and interest, but defendant has failed and refused to hire Jackson.

## E. SANDRA SOLOMON

42.     Sandra Solomon is highly experienced and qualified with respect to work in drafting, designing, scheduling and detailing. She holds two Associate degrees.

43.     In 2007, Solomon applied for positions with Dresser Waukesha as a Planner/Scheduler and as a Coordinator, Bill of Materials. Solomon was qualified for these positions. Solomon also submitted other applications to Dresser Waukesha on other occasions.

44.     Solomon was rejected for these and similar positions based on her race, African-American.

9

45.     Since her applications at Dresser Waukesha, there have been additional job openings at Dresser Waukesha for which Solomon was qualified, and defendant was aware of her applications and interest, but defendant has failed and refused to hire Solomon.

## F.  WILEY MALLETTE

46.     Wiley Mallette is a highly experienced and well-qualified machinist, who is skilled in operating an overhead crane, operating a forklift, die casting, machine set-up and reading blueprints and schematics.

47.     In approximately September 2008, Mallette applied for an open "Machinist III" position at Dresser Waukesha that he was qualified for.

48.     Mallette was rejected for the position based on his race, African-American.

49.     Since his application at Dresser Waukesha, there have been additional job openings at Dresser Waukesha for which Mallette was qualified, and defendant was aware of his prior application and interest, but defendant has failed and refused to hire Mallette.

## G.  CHRISTOPHER BOYD

50.     Christopher Boyd was hired by defendant on February 12, 2007, as a "Snagger" in the Fabrication area.  His job entails testing, deburring and clean finishing 2,000 to 3,000 parts per day. Boyd's skills were greater than the job in which he was initially placed, but he was promised that after 90 days, it would be possible for him to move around.

51.     Due to discriminatory application of the Skills Matrix mechanism, Boyd's starting pay was 25% of his grade, which remained the same for approximately one year.  During this time, Boyd was told he was required to learn skills not applicable to his job, but then was denied the opportunity to learn them (e.g. CNC-related training).

10

52.     Similarly situated white employees who were hired after Boyd were not required to undergo this additional training in order to complete their Skills Matrix. Similarly situated white employees with less seniority received a raise sooner than Boyd. In July or August of 2007, Boyd applied for a job as a tube bender, which was a promotion and would have led to further training, education and promotions. After Boyd applied, he was told the job was "eliminated." However, the job was re-posted later.

53.     Boyd has been subjected to undue scrutiny regarding his training and job duties.

## H.  HERMAN DAVIS

54.     Herman Davis was hired by defendant on February 5, 2006 as a Lapper, and is responsible for cleaning, smoothing, sanding and checking final dimensions of parts manufactured at Dresser Waukesha. His prior work experience exceeded that required for the position for which he was hired.

55.     Davis has been denied training in balancing parts on the lapper machine for small crank shafts and on the Cincinnati Machine. Therefore, he has been denied the opportunity to complete 100% of the training for his skill set. Similarly situated white employees were afforded this training and thus were eligible for earlier raises and earlier qualification in 100% of their skill set.

56.     As a result of being denied training on the Cincinnati Machine, Davis was ineligible to work overtime on that machine, which would have been consistently available for Davis to work, up to 16 hours per week, for approximately one and a half years. Similarly situated white employees were eligible for and able to work overtime instead of Davis.

## I.  GARY ROUNDTREE

57.     Gary Roundtree was hired by defendant on February 18, 1997 as a Machinist at its

11

Dresser Waukesha facilities. There were four African-Americans employed at Dresser Waukesha at the time. Roundtree currently holds the job of Machinist - CNC Operator, Grade 6. During the course of his employment with Dresser Waukesha, Roundtree was denied training, overtime and raises due to his race. Roundtree repeatedly complained to management and to Human Resources about race discrimination at Dresser Waukesha, including to the Vice President of Human Resources, Mark Fryer. Roundtree questioned why there were only 1% minorities at the plant and why there was no diversity training provided at the plant. He received no meaningful response and nothing was or has been done in response. In October 2004, Roundtree was required to present a certificate for a CNC position in order to be placed in that position. Roundtree's white counterparts were not required to present a certificate when being placed in such positions. While Roundtree received the CNC position, defendant failed to compensate him in the same manner as his white counterparts were compensated when receiving similar positions. Defendant withheld Roundtree's wage increase for six months whereas Roundtree's white counterparts' wage increases were not delayed. Defendant also forced Roundtree to work on a less desirable shift.

## COUNT I
### Section 1981 - Race Discrimination in Hiring and Recruitment

58.     Plaintiffs Reed, Murray, Nealon, Jackson, Solomon, and Mallette incorporate and reallege Paragraphs 1 through 57 of this Class Action Complaint as if set forth herein.

59.     Plaintiffs Reed, Murray, Nealon, Jackson, Solomon, and Mallette bring this Count individually and as a class action against the defendant pursuant to Fed.R.Civ.P. 23(a), and Rule 23(b)(2) and/or(b)(3). The class consists of all African-American persons who have applied and been rejected, have been interested in applying, or who have been deterred from applying for positions at Dresser Waukesha within the applicable limitations period.

12

60.     The aforementioned conduct of defendant was racially motivated and constitutes a pattern and practice of discrimination against plaintiffs Reed, Murray, Nealon, Jackson, Solomon, Mallette and the class in connection with hiring and recruitment for positions in violation of 42 U.S.C. § 1981.  Highly qualified African-Americans are repeatedly denied positions.   In addition, defendant's conduct has had the effect of deterring African-Americans from applying for jobs with Dresser Waukesha.

61.     The aforementioned conduct has resulted in damages to plaintiffs and the class including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation and embarrassment.   The foregoing acts of defendant, its agents and employees, were deliberate, intentional, willful, wanton and malicious and taken with reckless disregard to plaintiffs' civil rights, thereby entitling plaintiffs and the class to punitive damages.

62.     The members of this class are so numerous that joinder of all class members is impracticable.  While the exact number of class members can only be ascertained through discovery, plaintiffs allege on information and belief that there are in excess of 75 members of the class.

63.     There are questions of law or fact common to the class related to defendant's discriminatory failure to hire plaintiffs and members of the class, including, inter alia, whether defendant's company-wide hiring procedures and practices discriminated against African-American persons; whether defendant's conduct was carried out with discriminatory intent;  whether defendant has common defenses; and whether injunctive relief is an appropriate remedy for defendant's conduct and what injunctive relief should be ordered.

13

64.     The claims of the representative plaintiffs are typical of the claims of the class members inasmuch as they arise from the same course of conduct and are based upon the same legal theory.

65.     The representative plaintiffs and counsel will fairly and adequately protect the interests of the class. The representative plaintiffs do not have interests which are antagonistic to or in conflict with the class. The representative plaintiffs have retained counsel who are competent and experienced in employment discrimination and class litigation.

66.     The class can be properly certified under Fed.R.Civ.P. 23(b)(2) in that defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate injunctive relief or corresponding declaratory relief with respect to the class as a whole.

67.     The class can also be properly certified under Fed.R.Civ.P. 23(b)(3) in that common questions predominate over any questions affecting only individual class members.

68.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. There are no other considerations that would militate against the maintenance of this case as a class action.

69.     In the event that a plaintiff class is not certified as requested in this Count, the Court should still enter systemic injunctive relief to address the unlawful conduct complained of herein.

## **PRAYER FOR RELIEF**

70.     With respect to Count I, plaintiffs Reed, Murray, Nealon, Jackson, Solomon and Mallette respectfully request that this Court:

      a.     Determine that this claim should proceed as a class action claim on behalf of the class defined herein;

14

b.     Enter a judgment finding and declaring that defendant has discriminated against the representative plaintiffs and the class in violation of 42 U.S.C. § 1981;

c.     Grant a permanent injunction enjoining defendant, its officers, successors, assigns and all persons in active concert or participating with them, from engaging in any conduct which discriminates on the basis of race;

d.     Order defendant to make whole the representative plaintiffs and class members by providing back pay and prejudgment interest in amounts to be proven at trial and other affirmative relief necessary to eradicate the effects of defendant's unlawful employment practices including, but not limited to, hiring plaintiffs and class members;

e.     Order defendant to make whole the representative plaintiffs and class members by providing compensation for past and future pecuniary losses resulting from the unlawful practices alleged herein;

f.     Order defendant to make whole the representative plaintiffs and class members by providing compensation for past and future non-pecuniary losses resulting from the unlawful conduct alleged herein, including humiliation, in amounts to be determined at trial;

g.     Order defendant to pay to the representative plaintiffs and class members punitive damages for the malicious and reckless conduct alleged herein in amounts to be determined at trial;

h.     Award attorney's fees, costs and expenses incurred in this action; and

I.     Grant such other and further relief as this Court deems appropriate.

## COUNT II
### Title VII - Discrimination in Hiring and Recruitment
### (Disparate Treatment)

71.     Plaintiff Derrick Reed incorporates and realleges Paragraphs 1 through 57 of this Class Action Complaint as if set forth herein.

72.     Plaintiff Reed brings this Count individually and as a class action against the defendant pursuant to Fed.R.Civ.P. 23(a), and Rule 23(b)(2) and/or(b)(3).  The class consists of all African-

15

American persons who have applied and been rejected, have been interested in applying, or who have been deterred from applying for positions at Dresser Waukesha within the applicable limitations period.

73.    The aforementioned conduct of defendant was racially motivated and constitutes a pattern and practice of discrimination against plaintiff Reed and other African-Americans in connection with hiring and recruitment for positions in violation of Title VII of the Civil Rights Act of 1964, as amended.  In addition, defendant's conduct has had the effect of deterring African-Americans from applying for jobs with Dresser Waukesha.

74.    The aforementioned conduct has resulted in damages to plaintiff and the class including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation and embarrassment.  The foregoing acts of defendant, its agents and employees, were deliberate, intentional, willful, wanton and malicious and taken with reckless disregard to plaintiff's civil rights, thereby entitling plaintiff and the class to punitive damages.

75.    The members of this class are so numerous that joinder of all class members is impracticable. While the exact number of class members can only be ascertained through discovery, plaintiff alleges on information and belief that there are in excess of 75 members of the class.

76.    There are questions of law or fact common to the class related to defendant's discriminatory failure to hire plaintiff and members of the class, including, inter alia, whether defendant's company-wide hiring procedures and practices discriminated against African-American persons; whether defendant's conduct was carried out with discriminatory intent; whether defendant has common defenses; and whether injunctive relief is an appropriate remedy for defendant's conduct.

16

77. The claims of the representative plaintiff are typical of the claims of the class members inasmuch as they arise from the same course of conduct and are based upon the same legal theory.

78. The representative plaintiff and counsel will fairly and adequately protect the interests of the class. The representative plaintiff does not have interests which are antagonistic to or in conflict with the class. The representative plaintiff has retained counsel who are competent and experienced in employment discrimination and class litigation.

79. The class can be properly certified under Fed.R.Civ.P. 23(b)(2) in that defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate injunctive relief or corresponding declaratory relief with respect to the class as a whole.

80. The class can also be properly certified under Fed.R.Civ.P. 23(b)(3) in that common questions predominate over any questions affecting only individual class members.

81. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. There are no other considerations that would militate against the maintenance of this case as a class action.

82. In the event that a plaintiff class is not certified as requested in this Count, the Court should still enter systemic injunctive relief to address the unlawful conduct complained of herein.

## PRAYER FOR RELIEF

83. With respect to Count II, plaintiff Derrick Reed respectfully requests that this Court:

    a.    Determine that this claim should proceed as a class action claim on behalf of the class defined herein;

    b.    Enter a judgment finding and declaring that defendant has discriminated against the representative plaintiff and the class in violation of 42 U.S.C. § 1981;

17

c.      Grant a permanent injunction enjoining defendant, its officers, successors, assigns and all persons in active concert or participating with them, from engaging in any conduct which discriminates on the basis of race;

d.      Order defendant to make whole the representative plaintiff and class members by providing back pay and prejudgment interest in amounts to be proven at trial and other affirmative relief necessary to eradicate the effects of defendant's unlawful employment practices including, but not limited to, hiring plaintiff and class members;

e.      Order defendant to make whole the representative plaintiff and class members by providing compensation for past and future pecuniary losses resulting from the unlawful practices alleged herein;

f.      Order defendant to make whole the representative plaintiff and class members by providing compensation for past and future non-pecuniary losses resulting from the unlawful conduct alleged herein, including humiliation, in amounts to be determined at trial;

g.      Order defendant to pay to the representative plaintiff and class members punitive damages for the malicious and reckless conduct alleged herein in amounts to be determined at trial;

h.      Award attorney's fees, costs and expenses incurred in this action; and

I.      Grant such other and further relief as this Court deems appropriate.

## COUNT III
### Title VII - Discrimination in Hiring and Recruitment (Disparate Impact)

84.      Plaintiff Derrick Reed incorporates and realleges Paragraphs 1 through 57 of this Class Action Complaint as if set forth herein.

85.      Plaintiff Reed brings this Count individually and as a class action against the defendant pursuant to Fed.R.Civ.P. 23(a), and Rule 23(b)(2) and/or(b)(3).  The class consists of all African-American persons who have applied and been rejected, have been interested in applying, or who have been deterred from applying for positions at Dresser Waukesha within the applicable limitations period.

18

86.     Defendant's hiring and recruitment practices with respect to its Dresser Waukesha facilities have had a disparate impact on prospective African-American employees and applicants and are not job related, in violation of Title VII.  In particular, defendant's practice of committing hiring and recruiting decisions to the subjective discretion of its managers and defendant's use of excessively subjective, non-job related hiring and screening criteria (including the criteria of a pre-existing relationship with or referral from a member of defendant's work force), have adversely impacted the hiring of minority employees.

87.     The aforementioned conduct has resulted in damages to plaintiff and the class including, but not limited to, loss of employment, loss of pay, loss of benefits, emotional anguish, humiliation and embarrassment.

88.     The members of this class are so numerous that joinder of all class members is impracticable.  While the exact number of class members can only be ascertained through discovery, plaintiff alleges on information and belief that there are in excess of 75 members of the class.

89.     There are questions of law or fact common to the class related to defendant's discriminatory failure to hire plaintiff and members of the class, including, inter alia, whether defendant's hiring and recruitment practices had an adverse impact on plaintiff and members of the class; whether defendant's recruitment and hiring practices are job-related or justified by business necessity; whether defendant has common defenses; and whether injunctive relief is an appropriate remedy for defendant's conduct.

90.     The claims of the representative plaintiff are typical of the claims of the class members inasmuch as they arise from the same course of conduct and are based upon the same legal theory.

91. The representative plaintiff and counsel will fairly and adequately protect the interests of the class. The representative plaintiff does not have interests which are antagonistic to or in conflict with the class. The representative plaintiff has retained counsel who are competent and experienced in employment discrimination and class litigation.

92. The class can be properly certified under Fed.R.Civ.P. 23(b)(2) in that defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate injunctive relief or corresponding declaratory relief with respect to the class as a whole.

93. The class can also be properly certified under Fed.R.Civ.P. 23(b)(3) in that common questions predominate over any questions affecting only individual class members.

94. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. There are no other considerations that would militate against the maintenance of this case as a class action.

95. In the event that a plaintiff class is not certified as requested in this Count, the Court should still enter systemic injunctive relief to address the unlawful conduct complained of herein.

## PRAYER FOR RELIEF

96. With respect to Count III, plaintiff Derrick Reed respectfully requests that this Court:

a. Determine that this claim should proceed as a class action claim on behalf of the class defined herein;

b. Enter a judgment finding and declaring that defendant has discriminated against the representative plaintiff and the class in violation of 42 U.S.C. § 1981;

c. Grant a permanent injunction enjoining defendant, its officers, successors, assigns and all persons in active concert or participating with them, from engaging in any conduct which discriminates on the basis of race;

20

d.  Order defendant to make whole the representative plaintiff and class members by providing back pay and prejudgment interest in amounts to be proven at trial and other affirmative relief necessary to eradicate the effects of defendant's unlawful employment practices including, but not limited to, hiring plaintiff and the class members;

e.  Order defendant to make whole the representative plaintiff and class members by providing compensation for past and future pecuniary losses resulting from the unlawful practices alleged herein;

f.  Order defendant to make whole the representative plaintiff and class members by providing compensation for past and future non-pecuniary losses resulting from the unlawful conduct alleged herein, including humiliation, in amounts to be determined at trial;

g.  Order defendant to pay to the representative plaintiff and class members punitive damages for the malicious and reckless conduct alleged herein in amounts to be determined at trial;

h.  Award attorney's fees, costs and expenses incurred in this action; and

I.  Grant such other and further relief as this Court deems appropriate.

## COUNT IV
### Section 1981 - Christopher Boyd

97.  Plaintiff Boyd incorporates and realleges Paragraphs 1 through 57 of this Complaint as if set forth herein.

98.  The aforementioned conduct of defendant was racially motivated and constitutes discrimination against Boyd based on race in compensation, denial of promotions and as to the terms and conditions of employment, all in violation of 42 U.S.C. § 1981. The aforementioned conduct also constitutes a pattern and practice of discrimination against African-Americans in connection with compensation to employees, promotions and the terms and conditions of employment, in violation of 42 U.S.C. § 1981.

21

99. The aforementioned conduct has resulted in damages to plaintiff including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation and embarrassment. The foregoing acts of defendant, its agents and employees, were deliberate, intentional, willful, wanton and malicious and taken with reckless disregard to plaintiff's civil rights, thereby entitling plaintiff to punitive damages.

## PRAYER FOR RELIEF

100. With respect to Count IV, plaintiff Christopher Boyd respectfully requests that this Court:

  a. Enter a judgment finding and declaring that defendant has discriminated against the plaintiff in violation of 42 U.S.C. § 1981;

  b Grant a permanent injunction enjoining defendant, its officers, successors, assigns and all persons in active concert or participating with them, from engaging in any conduct which discriminates on the basis of race;

  c. Order defendant to make whole the plaintiff by providing back pay and prejudgment interest in amounts to be proven at trial and other affirmative relief necessary to eradicate the effects of defendant's unlawful employment practices;

  d. Order defendant to make whole the plaintiff by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices alleged herein;

  e. Order defendant to make whole the plaintiff by providing compensation for past and future non-pecuniary losses resulting from the unlawful conduct alleged herein, including humiliation, in amounts to be determined at trial;

  f. Order defendant to pay to the plaintiff punitive damages for the malicious and reckless conduct alleged herein in amounts to be determined at trial;

  g. Award the plaintiff attorney's fees, costs and expenses incurred in this action; and

  h. Grant such other and further relief as this Court deems appropriate.

## COUNT V
### Section 1981 - Herman Davis

101.     Plaintiff Davis incorporates and realleges Paragraphs 1 through 57 of this Complaint as if set forth herein.

102.     The aforementioned conduct of defendant was racially motivated and constitutes discrimination against Davis based on race in compensation, denial of promotions and as to the terms and conditions of employment, all in violation of 42 U.S.C. § 1981. The aforementioned conduct also constitutes a pattern and practice of discrimination against African-Americans in connection with compensation to employees, promotions and the terms and conditions of employment, in violation of 42 U.S.C. § 1981.

103.     The aforementioned conduct has resulted in damages to plaintiff including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation and embarrassment. The foregoing acts of defendant, its agents and employees, were deliberate, intentional, willful, wanton and malicious and taken with reckless disregard to plaintiff's civil rights, thereby entitling plaintiff to punitive damages.

### PRAYER FOR RELIEF

104.     With respect to Count V, plaintiff Herman Davis respectfully requests that this Court:

a.     Enter a judgment finding and declaring that defendant has discriminated against the plaintiff in violation of 42 U.S.C. § 1981;

b     Grant a permanent injunction enjoining defendant, its officers, successors, assigns and all persons in active concert or participating with them, from engaging in any conduct which discriminates on the basis of race;

23

c. Order defendant to make whole the plaintiff by providing back pay and prejudgment interest in amounts to be proven at trial and other affirmative relief necessary to eradicate the effects of defendant's unlawful employment practices;

d. Order defendant to make whole the plaintiff by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices alleged herein;

e. Order defendant to make whole the plaintiff by providing compensation for past and future non-pecuniary losses resulting from the unlawful conduct alleged herein, including humiliation, in amounts to be determined at trial;

f. Order defendant to pay to the plaintiff punitive damages for the malicious and reckless conduct alleged herein in amounts to be determined at trial;

g. Award the plaintiff attorney's fees, costs and expenses incurred in this action; and

h. Grant such other and further relief as this Court deems appropriate.

## COUNT VI
### Section 1981 - Gary Roundtree

105. Plaintiff Roundtree incorporates and realleges Paragraphs 1 through 57 of this Complaint as if set forth herein.

106. The aforementioned conduct of defendant was racially motivated and constitutes discrimination against Roundtree based on race in denial of promotion and as to the terms and conditions of employment, all in violation of 42 U.S.C. § 1981. The aforementioned conduct also constitutes a pattern and practice of discrimination against African-Americans in connection with compensation to employees, promotions and the terms and conditions of employment, in violation of 42 U.S.C. § 1981.

107. The aforementioned conduct has resulted in damages to plaintiff including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation and embarrassment. The

24

foregoing acts of defendant, its agents and employees, were deliberate, intentional, willful, wanton and malicious and taken with reckless disregard to plaintiff's civil rights, thereby entitling plaintiff to punitive damages.

## **PRAYER FOR RELIEF**

108.   With respect to Count VI, plaintiff Gary Roundtree respectfully requests that this Court:

a.   Enter a judgment finding and declaring that defendant has discriminated against the plaintiff in violation of 42 U.S.C. § 1981;

b   Grant a permanent injunction enjoining defendant, its officers, successors, assigns and all persons in active concert or participating with them, from engaging in any conduct which discriminates on the basis of race;

c.   Order defendant to make whole the plaintiff by providing back pay and prejudgment interest in amounts to be proven at trial and other affirmative relief necessary to eradicate the effects of defendant's unlawful employment practices;

d.   Order defendant to make whole the plaintiff by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices alleged herein;

e.   Order defendant to make whole the plaintiff by providing compensation for past and future non-pecuniary losses resulting from the unlawful conduct alleged herein, including humiliation, in amounts to be determined at trial;

f.   Order defendant to pay to the plaintiff punitive damages for the malicious and reckless conduct alleged herein in amounts to be determined at trial;

g.   Award the plaintiff attorney's fees, costs and expenses incurred in this action; and

h.   Grant such other and further relief as this Court deems appropriate.

Respectfully submitted,

One of Plaintiffs' Attorneys

25

Dated: June 30, 2010

Jennifer K. Soule
Kelly K. Lambert
James G. Bradtke
Soule, Bradtke & Lambert
155 North Michigan Avenue, Suite 504
Chicago, IL 60601
Phone: 312-616-4422
Fax: 312-616-4423

Peter G. Earle, WI SBN 1012176
Law Offices of Peter Earle, LLC
839 North Jefferson Street, Suite 300
Milwaukee, WI 53202
Phone: 414-276-1076
Fax: 414.276.0460
E-Mail: peter@earle-law.com