# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

---

DERRICK REED, WILLIE MURRAY,
TORRANCE NEALON, MONIQUE JACKSON,
WILEY MALLETTE and SANDRA SOLOMON
on their own behalf and on behalf of similarly
situated persons, CHRISTOPHER BOYD,
HERMAN DAVIS, and GARY ROUNDTREE,
individually,

        Plaintiffs,

    v.

DRESSER, INC.,

       Defendant.

Case No. 08-C-0818

Judge Lynn Adelman
Magistrate Judge Patrice J. Gorence

---

# CONSENT DECREE

Chicago:365550.1

# TABLE OF CONTENTS

| | |
|---|---|
| INTRODUCTION | 1 |
| JURISDICTION | 3 |
| DEFINITIONS | 4 |
| SETTLEMENT CLASS | 6 |
| RELEASE OF CLAIMS | 7 |
| MISCELLANEOUS PROVISIONS | 9 |
| ESTABLISHMENT OF SETTLEMENT FUND | 10 |
| NOTICE AND CLAIMS PROCEDURE | 11 |
| CLAIMS PROCEDURE | 14 |
| FAIRNESS HEARING | 16 |
| DISTRIBUTION OF SETTLEMENT FUND | 16 |
| TAX TREATMENT OF MONETARY AWARDS | 17 |
| ATTORNEYS FEES AND COSTS | 17 |
| GENERAL INJUNCTIVE PROVISIONS | 18 |
| DURATION OF DECREE | 20 |
| APPOINTMENT OF NANCY KREITER | 21 |
| KREITER DUTIES | 21 |
| EQUITABLE RELIEF/RELATED ISSUES | 22 |
| RECORD KEEPING | 32 |
| DISPUTE RESOLUTION | 32 |
| COSTS OF IMPLEMENTATION OF DECREE | 35 |
| MISCELLANEOUS PROVISIONS | 36 |

Case 2:08-cv-00818-LA   Filed 09/23/10   Page 2 of 40   Document 59

# I.   INTRODUCTION

This Consent Decree is made and entered into by and among the plaintiffs and plaintiff class in <u>Reed, et al. v. Dresser, Inc.</u>, and Dresser, Inc. ("Defendant," "Dresser," or "the Company") (collectively referred to herein as "the Parties") for the purpose of fully and finally resolving the litigation covered hereby.

## The Reed Litigation

A.      On September 29, 2008, Plaintiffs filed a class action complaint, captioned <u>Reed, et al. v. Waukesha Engines and Dresser, Inc.</u>, under 42 U.S.C. §1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq.</u> ("Title VII"). The complaint was filed on behalf of a putative class of African-American persons who applied but were rejected for employment with Dresser, Inc. at its Waukesha, Wisconsin facility ("Dresser Waukesha"). The complaint also included individual claims by African-American employees, alleging race discrimination with respect to hiring, job assignment, promotion, compensation, training, and terms and conditions of employment at Dresser's Waukesha, Wisconsin facility.

B.      Subsequently, Plaintiffs filed First, Second, Third, and Fourth Amended Class Action Complaints.

C.      Plaintiffs' Complaint and First Amended Complaint included claims brought on behalf of Khaleelah Ali, Corey Dainty, and Valerie Langston. On November 13, 2008, Defendant moved to dismiss these individuals' claims and compel arbitration pursuant to Dresser's Dispute Resolution Program. The Court granted Defendant's motion on July 23, 2009. On September 22, 2009, Ali, Dainty, and Langston filed claims with the American Arbitration Association alleging violations of 42 U.S.C. § 1981, Case No. 51 460 01242 09 (the "AAA Action").

D.     The Company categorically denies that it has engaged in a policy or pattern and practice of race discrimination against any African-American persons, whether collectively or individually, and maintains that applicants for employment have at all times had equal employment opportunity with respect to hiring and job assignment.

E.     The Parties made their initial disclosures related to the failure to hire claims pursuant to Federal Rule of Civil Procedure 26(a) on June 26, 2009.  Plaintiffs subsequently served initial disclosures for Plaintiffs Murray, Nealon, Roundtree, Davis, and Boyd pursuant to Federal Rule of Civil Procedure 26(a) on October 12, 2009, and Defendant served initial disclosures for these individuals on October 13, 2009.

F.     Plaintiffs served their First Requests for Admission, First Interrogatories and First Document Requests on July 10, 2009.  Defendant responded to the Requests for Admission on August 10, 2009, and responded to the Interrogatories and Document Requests on September 9, 2009.

G.     Pursuant to Local Rule 37.1, the Parties engaged in extensive efforts to reach accord on discovery disputes, with Plaintiffs outlining perceived deficiencies in Defendant's discovery responses by letters dated September 11, 2009; September 25, 2009; October 15, 2009; and November 3, 2009.  Defendant responded to Plaintiffs' letters and/or provided additional information by letters dated October 2, 2009, November 3, 2009, November 4, 2009, and November 20, 2009.  In addition, the parties held numerous telephonic conferences regarding discovery disputes.

H.     In response to Plaintiff's various requests, Defendant produced over 30,000 pages of documentation, as well as electronic data related to applicant logs and the demographics of the workforce at Dresser Waukesha.

## Mediation

I.    The Plaintiffs have vigorously prosecuted this case, and the Company has vigorously contested it. The parties have taken sufficient discovery to assess reliably the relative merits of the claims and defenses.

J.    On March 30 and 31, 2010 the parties conducted settlement negotiations through mediation, with Hunter Hughes as the Mediator. Under the supervision of the Mediator, these negotiations have been conducted at arms-length and without collusion. The mediation discussions, and further settlement negotiations that followed, culminated in this Decree, as well as the settlement of the claims brought in the AAA Action.

## II.    JURISDICTION

A.    The Court has jurisdiction over the parties and subject matter of the Reed litigation. The claims asserted in the Complaints, if proven, would authorize the Court to grant the equitable and monetary relief set forth in this Decree. Venue is proper in this District. The Court shall maintain jurisdiction of this action for the duration of the Decree solely for the purpose of entering all orders authorized hereunder which may be necessary to implement relief provided herein.

B.    This Decree resolves all claims alleged in the Complaints filed in the Reed Action. This Decree constitutes a complete resolution of all claims of discrimination against African-Americans arising from conduct occurring from September 29, 2002 through the Preliminary Approval Date with respect to hiring, compensation, advancement, training, and other terms and conditions of employment under Title VII and 42 U.S.C. § 1981 that were alleged or could have been alleged in the Complaints.

## III.  DEFINITIONS

1.  "African-American" means all persons having origins in any of the black racial groups of Africa.

2.  "Applicant" means an African-American individual who Applied for employment at Dresser's Waukesha, Wisconsin facility.

3.  "Applied" means that an individual expressed interest in obtaining a job with Dresser at its Waukesha, Wisconsin facility by submitting a resume or application for employment (either electronically or via hard copy), or by otherwise applying for a posted position at Dresser, in person, by phone call, letter, or e-mail.

4.  "Approval Date" means the date upon which the Court signs this Decree, after determining that it is fair, adequate and reasonable to the Class as a whole, after (i) notice; (ii) an opportunity to opt-out of the Settlement Class with respect to the monetary relief; (iii) an opportunity to submit timely objections to the Decree; and (iv) a hearing on the fairness of the settlement.

5.  "Reed Action" means Reed, et al. v. Dresser, Inc., E.D. Wisconsin, No. 08 C 0818.

6.  "Reed Plaintiffs" or "Plaintiffs" means Derrick Reed, Willie Murray, Torrance Nealon, Monique Jackson, Sandra Solomon, and Wiley Mallette as well as Christopher Boyd, Herman Davis, and Gary Roundtree in the Reed Action.

7.  "AAA Action" means Ali et al. v. Dresser, Inc., American Arbitration Association, Case No. 51 460 01242 09.

8.  "AAA Claimants" means Khaleelah Ali, Corey Dainty, and Valerie Langston.

9. "Class Counsel" for the "Class" means: Jennifer Soule, James Bradtke, and Kelly Lambert of Soule, Bradtke & Lambert and Peter Earle of the Law Offices of Peter G. Earle.

10. "Class Representatives" for the "Class" means Reed, Murray, Nealon, Jackson, Solomon, and Mallette.

11. "Settlement Class," and "Class" each mean those persons described in Section IV, below.

12. "Court" means the United States District Court for the Eastern District of Wisconsin.

13. "Eligible Claimants" means all African-American Applicants for employment at Dresser's Waukesha, Wisconsin facility at any time on or after September 29, 2002 through the Preliminary Approval Date, who do not opt-out of the Settlement Class and whose complete claim forms are timely received by Claim Administrator.

14. Final Approval" means: (a) entry of this Decree, provided that no timely objections to the overall fairness, adequacy or reasonableness of the settlement, not sustained or resolved by the Court, are presented to the District Court pursuant to Section X.B.; (b) in the event of a timely objection to the overall fairness, adequacy or reasonableness of the settlement, then the earliest of: (i) expiration of the time for filing a direct appeal from the Court's approval of the decree without the filing of a notice of appeal; (ii) if an appeal is filed, the final resolution of the appeal resulting in final judicial approval of the Decree; or (iii) a negotiated resolution of the objection resulting in final judicial approval of the Decree.

15. "Final Approval Date" is the date upon which Final Approval of this Decree is attained, as set forth in Paragraph 14 above.

16.     "Lead Counsel" for the Class means Jennifer Soule at Soule, Bradtke & Lambert, 155 North Michigan Avenue, Suite 500, Chicago, Illinois 60601.

17.     "Liability Period" means the period between September 29, 2002 and the July 14, 2010, the Preliminary Approval Date.

18.     "Settlement Fund" means the amount to be paid by Dresser under this Decree. "Class Fund" means the amount to be paid by Dresser to the Class.

19.     "Preliminary Approval Date" means the date upon which the Court enters an Order preliminarily approving this Decree, pending notice, setting an opportunity for opt-out of the Class or to submit objections to the Decree, and scheduling a fairness hearing thereon.

20.     "Release" means the Release of Claims as provided for herein.

21.     "Term of the Decree," "Period of the Decree" or "Duration of the Decree" is the period from the Approval Date until the expiration of the Decree, as described in Section XV below.

22.     "Dresser" or the "Company" means Dresser, Inc., as well as each of its parents, subsidiaries, affiliates, officers, directors, agents, management, successors and assigns and those in active concert or participation with them, or any of them. Any time or place the terms "Dresser" or "the Company" appears herein as relates to any duty or obligation, such terms of this Decree only apply to and are strictly limited to Dresser's Waukesha, Wisconsin facility.

## IV.     SETTLEMENT CLASS

A.     For purposes of the monetary relief provided in this Decree, the "Settlement Class" is and consists of, pursuant to Federal Rule of Civil Procedure 23(b)(2), all African-American Applicants for employment at Dresser's Waukesha, Wisconsin facility, who Applied for employment at any time on or after September 29, 2002 through the Preliminary Approval

Date, except those who were hired by Dresser or who timely file a request to opt-out of the monetary relief provisions of this Decree.

B.       For purposes of the equitable and declaratory relief provided in this Decree, the Settlement Class is and consists of, pursuant to Federal Rule of Civil Procedure 23(b)(2), all African-American Applicants for employment at Dresser's Waukesha, Wisconsin facility, who Applied for employment and were not hired at any time on or after September 29, 2002 through the Preliminary Approval Date.

C.       For purposes of Section V below of this Decree, Class Members who have filed timely requests to opt-out of the monetary relief provisions of the Decree shall not be held to release any claims for individual relief.

D.       In the event that Final Approval of this Decree is not attained, nothing herein shall be deemed to waive the Company's objections and defenses to class certification, liability or entitlement to monetary or equitable relief, or any other issue, and this Decree shall not be admissible or citable in any court regarding the propriety of class certification or any other issue or subject.

V.    **RELEASE OF CLAIMS**

A.       <u>Release of Claims by the Settlement Class</u>.  Upon Final Approval of the Decree, Dresser and its directors, officers, managers, agents, employees, attorneys, insurers, pension, profit sharing, savings and other employee benefits plans of whatsoever nature, as well as those plans' trustees and administrators, and for each of the foregoing, their respective successors and assigns, shall be fully released and forever discharged from any and all individual and/or class-wide claims, demands, charges, complaints, rights and causes of actions of any kind, known or unknown, by the Plaintiffs, Class Representatives, the Settlement Class and by each member of

the Settlement Class, including their heirs, assigns and estates, whether seeking monetary and/or equitable relief of any sort, which arise out of or are related to conduct within the applicable Liability Period constituting alleged discrimination or retaliation based on race and/or color, and/or an alleged violation of 42 U.S.C. 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq., and/or any other federal, state or local law or order prohibiting discrimination and/or retaliation based on race and/or color, whether statutory, regulatory, pursuant to local ordinance or at common law which was or could have been asserted in the Reed Litigation. This release is final and shall survive the expiration of the Decree's term.

      B.    <u>Release of Claims by Class Representatives</u>. Upon Final Approval of the Decree, for and in consideration of the mutual promises, terms and conditions set forth herein, the sufficiency of which consideration is expressly acknowledged, Dresser and its directors, officers, managers, agents, employees, attorneys, insurers, pension, profit sharing, savings and other employee benefits plans of whatsoever nature, as well as those plans' trustees and administrators, and for each of the foregoing, their respective successors and assigns, shall be fully released and forever discharged by the Class Representatives, including their heirs, assigns and estates from any and all claims, demands, charges, complaints, rights actions, causes of actions, suits, demands, damages, liabilities, assessments, judgments, costs, losses, debts, obligations and expenses, of any and every kind, known or unknown, that they have had, now have or may have from the beginning of time to the Preliminary Approval Date, including, but not limited to, those arising in any way out of the alleged facts, circumstances and occurrences underlying those allegations of violations of Title VII and/or Section 1981 that were asserted or might have been asserted by or on behalf of Plaintiffs and/or the Class Representatives against the Company either in the Complaints filed, or in any and all charges of discrimination filed against Dresser or

any other allegedly illegal, unlawful or tortious actions by Dresser. The sole exception to the foregoing is that this release does not include workers' compensation claims, if any, of the Class Representative and/or Plaintiffs. This release is final and shall survive the expiration of the Decree's term.

C.    <u>No Bar to Future Claims</u>.  Nothing in this Decree shall be construed to bar any claims of the Settlement Class, Plaintiffs and/or Class Representatives based on or arising out of events occurring after the Preliminary Approval Date.

## VI.    <u>MISCELLANEOUS PROVISIONS</u>

A.    <u>No Admission of Liability</u>.  This Decree does not constitute and shall not be deemed to be a finding or determination by the Court, nor an admission by any party, regarding the merits, validity or accuracy of any of the allegations, claims or defenses.  This Decree represents the compromise of disputed claims that the parties recognize would require protracted and costly litigation to determine.  Dresser denies that it has engaged in any policy or pattern or practice of unlawful discrimination, or that it has engaged in any other unlawful conduct. Dresser's entry into this Decree is not and may not be used by any person or entity in any proceeding as an admission or evidence that Dresser and/or its employees, managers, and/or attorneys have on any occasion engaged in discriminatory employment practices or any other unlawful conduct, such being expressly denied.  Dresser has voluntarily entered into this Decree because it believes the actions it has agreed to undertake demonstrate its strong commitment to equal employment opportunity.  Neither the Decree nor any compliance reports, filings, data, or other compliance information arising out of or related to the Decree shall be discoverable, admissible or used as evidence of liability or non-liability for unlawful discrimination in any proceeding other than one relating to the enforcement of this Decree.

B.    <u>Duty to Support and Defend the Decree</u>.  Plaintiffs, Class Representatives, Class Counsel and Dresser each agree to abide by all of the terms of this Decree in good faith and to support it fully, and shall use their best efforts to defend this Decree from any legal challenge, whether by appeal or collateral attack.

## VII.   <u>ESTABLISHMENT OF SETTLEMENT FUND</u>

A.    <u>Settlement Fund</u>.

1.    As of the Preliminary Approval Date, Dresser shall cause to be established a Qualified Settlement Fund under §468(b) of the Internal Revenue Code ("the Settlement Fund") hereunder in the principal amount of $950,000.00 for the purpose of providing individual monetary awards to Class Representatives and other Eligible Claimants, and paying the portion of Plaintiffs' incurred attorneys' fees and costs attributable to Class claims.   On Final Approval, the Settlement Fund shall be distributed by the Claims Administrator to Eligible Claimants, Class Representatives and Class Counsel pursuant to Paragraph VII.A.2.   On Final Approval, the Qualified Settlement Fund, subject to the provisions herein, shall be transferred to the Claims Administrator, who shall be authorized to issue checks to Eligible Claimants, Class Representatives and Class Counsel.

2.    The Settlement Fund will be distributed to Class Counsel, Class Representatives, and Eligible Claimants as follows:

      a.    Class Counsel will receive a payment of $300,000.00, as specified in Paragraph XIII.A for fees and costs incurred to date attributable to Class claims;

      b.    Each Class Representative will receive a payment of $10,000.00 subject to the tax treatment defined in paragraph XII; and

       c.     The remainder of the Settlement Fund will be distributed equally among the Class Representatives and other Eligible Claimants subject to the tax treatment defined in paragraph XII.

B.     The Settlement Fund shall be distributed to Eligible Claimants pursuant to the procedures described in this Decree, provided that at least ten (10) Eligible Claimants and/or Class Representatives submit claims. In the event that less than ten (10) Class Representatives and/or Eligible Claimants submit claims, Dresser may within ten (10) business days elect to nullify the settlement, in its totality or limited to the claims of the class.

C.     Dresser shall not take any action to dissuade Eligible Claimants from filing a claim. If Class Counsel believes Dresser took any action that adversely interfered with, deterred, or discouraged Eligible Claimants from filing a claim, they will notify Dresser in writing of such actions.

D.     There shall be one award per claimant regardless of the number of applications, provided, however, that this provision does not preclude a class representative from also receiving an incentive award.

## VIII. NOTICE AND CLAIMS PROCEDURE

A.     On or within one (1) business day of the Preliminary Approval Date, Dresser shall transmit to the Claims Administrator in electronic format information regarding Applicants for employment during the Liability Period. For the period from September 29, 2002 through December 31, 2004, Dresser will provide information available to it regarding all individuals who Applied for employment at Dresser who were not hired. For the period from January 1, 2005 through the Preliminary Approval Date, Dresser will provide information available to it regarding Applicants who identified themselves as African-American and who were not hired. The information to be provided regarding Applicants shall include an Applicant's full name,

social security number, and last known address, and telephone number to the extent Dresser possesses this information. The information provided by Dresser to the Claims Administrator shall also be provided to Class Counsel.

B. <u>Publication Notice to Class Members</u>. Within seven (7) days after the Preliminary Approval Date, Dresser shall cause to be published in the *Milwaukee Journal Sentinel,* notice informing potential members of (i) preliminary approval by the Court of the settlement of the case; (ii) a general description of the action and description of who is eligible to submit a claim; (iii) the amount of the total monetary compensation to be paid class members and that members of the class will receive a pro rata share of the monetary compensation; and (iv) contact information for the Claims Administrator with instructions to contact the Claims Administrator by phone, mail or e-mail by August 4, 2010 to request a Claims Package as defined in paragraph VIII.C below. This publication notice shall be run in column format for one day on any day except Sunday. Dresser shall be responsible for the cost of this notice, and this cost shall count toward the maximum amount of claims administration expenses, fees, and costs that is the responsibility of Dresser, as referenced in paragraph IX.A. The parties' counsel shall agree to the content of the published notice. Defendant shall provide contemporaneous notice to Plaintiffs of the date of publication.

C. <u>Mailed Notice to Class Members</u>. Within ten (10) days of the receipt of the employee data referenced above in paragraph VIII.A, the Claims Administrator shall, concerning each applicant whose data is supplied by the Company: (i) reasonably identify the most recent address for each applicant whose last known address is supplied by the Company by undertaking a search through the National Change Of Address ("NCOA") data base; and (ii) conduct through reasonable methods a "best trace" address search of each applicant whose data is supplied by the

Company. Within the same ten (10) day period, the Claims Administrator shall then mail to all known and potential Class Members as described above in paragraph VIII.A at both their most recent address obtained and their best trace address (if the best trace address is different than the most recent address), via first class postage, (i) a Notice of Settlement, and (ii) Claim Form and Release ("Claim Package"). The Claim Package shall consist of the forms attached at Exhibit A (i) and (ii), approved (or modified) by the Court in the Preliminary Approval Order. In addition, the Claims Administrator shall mail or, upon request, e-mail a Claims Package to individuals requesting a Claims Package pursuant to the publication notice referenced in paragraph VIII.B above within five (5) days of receiving such written request.

        1.     <u>Form of Notice to Class Members</u>. The Claim Package to be sent to the Class Members shall be in the form attached hereto and approved (or modified) by the Court and is intended to include the following:

        a.     a statement that there is a proposed settlement of the claims in the Reed Action;

        b.     a description of the Reed Action and description of the terms of the settlement, including the manner that will be used to calculate settlement proceeds to be paid each class member;

        c.     a statement that the Court will hold a hearing at which time the Court will consider the fairness, adequacy and reasonableness of the proposed settlement;

        d.     a statement that a Class Member may elect to opt-out of the monetary provisions of the proposed settlement;

        e.     a statement that Class Members who do not opt-out may object by submitting written objections regarding the settlement <u>and appearing</u> at the fairness hearing;

        f.     a statement on the outside of the envelope in a prominent manner as follows: Notice Of Class Action Settlement With Dresser Waukesha Engines – You May Be Entitled To An Award; and

g.     a claim form which includes a release and instructions.

2.     <u>Class Opt-Outs</u>.  If there are ten (10) or more opt-outs, Dresser has the right for ten (10) business days after the Claims Administrator notifies the parties of the total number of opt-outs and provides Dresser with the name, social security number and a copy of the opt-out request for each person to elect to nullify the settlement, in whole or as to the class claims.  In such event, all subject releases will be considered null and void, the Decree is null and void and any Orders hereunder shall be vacated by the consent motion of the parties.

## IX.   <u>CLAIMS PROCEDURE</u>

A.     <u>Claims Administrator</u>.  The parties agree that Settlement Services Incorporated shall be the Claims Administrator and shall: (a) conduct address searches as described above, (b) mail the Claims Package; (c) receive claim forms, objections, opt-outs and other communications from Class Members; (d) issue checks from the Settlement Fund; (e) issue related tax documents; and (f) perform such other administrative tasks as it may deem necessary to facilitate the claims process.  All expenses, fees, and costs of the Claims Administrator shall be paid by the Company up to a maximum of $100,000.00.

B.     <u>Class Members Right to Opt-Out</u>.  Members of the Class may exclude themselves; that is opt-out, of the monetary relief provisions of the proposed settlement.  Any request for exclusion must be in writing, must include the individual's name and address and must be mailed to the Claims Administrator, post marked on or before September 3, 2010.  The notice that a Class Member is opting out must be postmarked on or before September 3, 2010 in order to be considered timely.

C.     Submission of Claim Forms.  Eligible Claimants who seek money from the Settlement Fund must complete a claim form which includes a release and a readable copy of a government-issued photo i.d. and cause it to be sent to the Claims Administrator postmarked no later than September 3, 2010.  All claim forms must be signed under penalty of perjury to be considered.

D.     Late Claims.   For claims received after the filing deadline, the Claims Administrator shall notify late-filing claimants that their claims are untimely and that they are not eligible for any monetary award.

E.     Incomplete Forms.  The claims form shall plainly inform class members that, if a claim form including its release is determined to be incomplete by the Claims Administrator, the claim will be denied and the Claims Administrator shall inform the claimant that he/she is not eligible for a monetary award.  Should the Claims Administrator identify unanticipated questions about submitted claims, the Claims Administrator shall notify counsel for the parties.

F.     Claims of Deceased Persons.  Claims may be filed by deceased claimants through legal representatives of their estate if appropriate documentation (letters testamentary or the equivalent) is provided.  Otherwise, all requirements for claims must be also followed.  Any claims paid to a deceased claimant shall be made payable to the estate of the deceased claimant.

G.     Determination of Claims.  Prior to the Final Fairness Hearing, the Claims Administrator shall determine whether each Eligible Claimant who filed timely claims is eligible to receive a monetary award and shall determine the amount of each monetary award in accordance with Paragraph VII.A.2. The determination of whether a person is eligible to receive a monetary award is limited to the following criteria:  (a) the person represented by signing the claims form under penalty of perjury that they are African-American and submitted a readable

photocopy of government-issued identification that includes their picture; (b) the person must have applied for employment at Dresser's Waukesha facility during the class period and not been hired; (c) the claim must be timely; and (d) the claim form must be complete and not altered.

## X.   FAIRNESS HEARING

A.      A Fairness Hearing to consider the overall fairness, reasonableness and adequacy of the proposed settlement shall be held on September 23, 2010 as specified by the District Court at the time of Preliminary Approval.   The notices described in Paragraph VIII.B and C shall identify this date.

B.      Appearance By Class Members at Fairness Hearing.  Any member of the Class as defined in this Decree who wishes to be heard in opposition to the overall or individual fairness, reasonableness and adequacy of the settlement, including monetary awards, may appear at the Fairness Hearing, provided that such member of the Class must first provide to the Claims Administrator a notice of intention to appear and written statement of position (including name and address) to be asserted, postmarked by September 3, 2010.   The Claims Administrator shall transmit any such notices and statements to the District Court and Counsel by overnight mail by September 17, 2010

C.      The Court will rule on any objections as to the overall or individual fairness, reasonableness and adequacy of the proposed settlement.

## XI.      DISTRIBUTION OF SETTLEMENT FUND

As defined in Paragraph III.14, above, within seven days of Final Approval, the Claims Administrator shall issue and mail a check to each Eligible Claimant in the amount reflected in the final settlement distribution list.

## XII.   TAX TREATMENT OF MONETARY AWARDS

The monetary awards shall be allocated 30% to lost wages from which taxes shall be withheld and an IRS Form W-2 shall issue, and 70% to compensatory damages from which no taxes shall be withheld and an IRS Form 1099 shall issue.

## XIII.   ATTORNEYS FEES AND COSTS

A.   <u>Attorney's Fees to Date</u>.  The Parties agree that Class Counsel is entitled to fees and costs incurred in the prosecution of the Class claims in the Reed Action in the amount of $300,000.00.  This amount will be paid from the Settlement Fund.  Only Soule, Bradtke & Lambert will receive a 1099 from the Company for this payment.  The parties further agree that Class Counsel will be paid additional fees and costs related to the settlement of the claims of the individual, non-class Plaintiffs in the Reed Action and to the settlement of the claims of the AAA Claimants.

B.   <u>Attorney's Fees Related to Approval of Decree Claims Process and Monitoring</u>. The parties agree that the entitlement of Class Counsel to fees and costs related to approval of this Decree, the claims process, and monitoring the injunctive provisions will be capped at $20,000.00; provided that if the EEOC intervenes in the Reed Action, or the parties are required to defend the Decree pursuant to Paragraph VI.B, or other significant difficulties related to the approval or implementation (<u>see</u> Paragraph XXI) of this Decree arise that result in substantial additional effort by Class Counsel, the above-referenced cap will not apply.

C.   <u>Time For Payment</u>.  The fees determined to be owing to Class Counsel under A or B above shall be paid to Class Counsel within seven (7) days after Final Approval, as defined in Paragraph III.14.  In the event that an objection is timely and completely presented in the District Court pursuant to Section X.B. and is limited to the determination of a particular objector's

claim, an amount equal to the claim at issue shall be withheld from the amount paid to class counsel; provided that said amount shall be paid to class counsel if and when the objection is conclusively resolved without payment to the objector.

## XIV.   GENERAL INJUNCTIVE PROVISIONS

A.     For the term of the Decree, Dresser shall not enact, maintain or implement any policy or engage in any practice or procedure that has the purpose or effect of unlawfully discriminating against anyone on the basis of race and/or color.

B.     For the term of the Decree, Dresser shall not enact, maintain or implement any policy or engage in any practice, conduct or procedure that retaliates or has the purpose or effect of retaliating against any current, future, or former employee of Dresser because he or she opposed discrimination on the basis of race and/or color; filed a charge of discrimination on the basis of race and/or color; testified, furnished information or participated in any manner in any investigation, proceeding, or hearing in connection with any charge or complaint of discrimination on the basis of race and/or color; testified, furnished information or participated in any manner in connection with the monitoring or implementation of this Decree; or sought and/or received any monetary and/or non-monetary relief pursuant to this Decree.

C.     For the term of the Decree, Dresser shall maintain all records as required by Title VII and EEOC regulations.

D.     Within ten days of the Final Approval Date, Dresser shall post in conspicuous places where employee notices are posted at Dresser Waukesha a notice informing employees that Nancy Kreiter (who is appointed as Monitor pursuant to paragraph XVI below) has been retained by the Company to act as a consultant on diversity and inclusion initiatives and providing contact information for Kreiter.

E.    For the term of the Decree, Dresser will make available to African American employees the same employment opportunities and terms and conditions of employment, including but not limited to job assignments and promotions, as Dresser affords similarly-situated white employees.

F.    Nothing herein should be construed as any finding or admission that Dresser previously has failed to act in the manner described herein, such being expressly denied by Dresser.

G.    Except as provided in alternative dispute resolution provisions herein, employees complaining of alleged violations of the provisions set forth in this section may utilize Dresser's internal complaint procedures (as applicable) and/or may file charges with the EEOC, or the state or local fair employment practices ("FEP") agency.

H.    As of the Approval Date, and pursuant to the Court's authority under the All Writs Act and the Anti-Injunction Act, 28 U.S.C. §§ 1651, 2283, and Federal Rule of Civil Procedure 23 (where applicable), each and every Plaintiff, Class Representative, and each Settlement Class member who has not filed a timely request to opt-out shall be and hereby is permanently enjoined from bringing any claims released, in any court, agency or adjudicative body, whether federal, state or local.

## XV.    DURATION OF DECREE

A.    Unless otherwise provided, the equitable provisions of this Decree are effective thirty (30) days following the Approval Date; provided, however, that in the event that this Decree ultimately does not receive Final Approval, then any Order hereunder shall be vacated.

B.    The terms of this Decree shall remain in effect for a period of forty-two months from the Approval Date and shall expire without further action by the parties at midnight on the last day of the 42nd month after the Approval Date.  Dresser may be relieved of the provisions of the Decree at any time following the expiration of thirty-six months from the  Approval Date of the Decree if Nancy Kreiter (who is appointed as monitor pursuant to Section XVI below) determines that Dresser (a) has in all material respects implemented and maintained all policies, programs, practices, and other procedures required by this Decree; (b) has in all material respects applied its policies and practices regarding compensation, promotion, and training in such a way as not to discriminate unlawfully against minorities with respect to compensation, promotion and training; and (c) has complied with all monetary provisions of this Decree.  If Kreiter determines that Dresser satisfies the criteria in (a), (b) and (c) herein, then the Court, on motion by Dresser shall terminate this Decree upon conclusion of the thirty-six (36) months.

C.    Notwithstanding anything to the contrary in paragraph XV.B directly above, if Dresser Waukesha has not hired individuals into bargaining unit positions prior to the expiration of the Decree pursuant to paragraph XV.B, the term of the Decree covering those provisions of the Decree in paragraphs XVIII.B, XVIII.C, and XVIII.K shall be extending for a period of 24 months after hiring into bargaining unit positions begins, provided, however, that any such extension shall not extend past December 31, 2016.

      D.     During the duration of this Consent Decree, the Court shall retain jurisdiction over this matter and the Parties for the purposes of enforcing compliance with the Decree, including issuing such orders as may be required to effectuate its purposes.

## XVI.   APPOINTMENT OF NANCY KREITER

      The parties have stipulated that Nancy B. Kreiter ("Kreiter") shall be appointed to serve for the duration of the Decree for the purpose of overseeing Dresser's implementation of and compliance with the terms of the Decree and providing advice and assistance to Dresser. Kreiter's specific duties are as set forth herein to oversee and ensure Dresser's compliance with obligations in Sections XIV through XIX of this Decree. The parties agree that Kreiter's duties shall commence upon the Final Approval Date of this Consent Decree; provided, however, that following Preliminary Approval Kreiter and appropriate Dresser officials shall engage in a preparatory meeting for the purpose of promptly and effectively commencing performance of her duties hereunder as of the Approval Date and Kreiter shall be compensated for this meeting and reimbursed by Dresser as provided hereunder. In the event that Kreiter cannot serve for the full term of the Decree, Class Counsel shall propose a replacement to Dresser for approval. If the parties agree on a replacement, the Parties shall file a joint motion for an order from the Court appointing the replacement. If the parties are unable to agree on a replacement, the Court shall make such replacement appointment, giving due consideration to any recommendation of the parties.

## XVII.  **KREITER DUTIES**

      During the term hereof, Kreiter shall have the duty to and responsibility to oversee Dresser's compliance with the provisions of Sections XIV through XIX of this Decree and to

provide advice and consultation to Dresser as she deems appropriate to assist Dresser in carrying out its duties hereunder.

## XVIII. EQUITABLE RELIEF/RELATED ISSUES

A.    Complaint Investigation Process.

1.    Within thirty (30) days of the Approval Date, the Company shall adopt and implement for its Waukesha, Wisconsin facility a written complaint procedure and protocol which provides for, inter alia, the receipt, logging, investigating, documenting and responding to internal complaints of discrimination and/or harassment on the basis of race and/or color, as well as any complaint of retaliation.

2.    Within thirty (30) days of the Approval Date, Dresser shall adopt and implement for its Waukesha, Wisconsin facility a complaint tracking spreadsheet for the purpose of recording information related to complaints of discrimination and/or harassment on the basis of race and/or color, as well as any complaint of retaliation, all with respect to hiring, compensation, performance appraisals, training, and/or promotion or retaliation.

3.    Dresser shall provide Kreiter with the complaint tracking spreadsheets on a quarterly basis for the term hereof and Kreiter may seek backup or further documents or information in respect of any complaint identified on the tracking spreadsheet.  With respect to any tracking spreadsheet complaints that in Kreiter's good faith opinion reflect systemic or a pattern of discrimination against African American individuals, Kreiter is authorized to address such conduct and take such steps as authorized by Paragraph 5, below.

4.    During the first year following the Approval Date, Dresser shall on a quarterly basis provide Kreiter with 3 (assuming there are at least 3) employee complaints (as selected by her from the complaint tracking spreadsheet), along with all related investigative

files, and written reports summarizing the investigation and remedial actions taken or proposed by Dresser relative to each such complaint. In addition, in any instance where Kreiter receives directly a complaint (whether oral or written) of discrimination and/or harassment on the basis of race and/or color, she shall refer such complaint to Dresser for investigation and appropriate remedial action and the complaint shall thereafter be handled as provided in Paragraph 5, below.

5. Kreiter will review Dresser's investigation of each complaint that in her good faith opinion reflects systemic or a pattern of discrimination against African Americans and in Paragraph 4 above, and, where appropriate, may make recommendations to Dresser regarding the investigation and resolution of complaints. Kreiter may recommend the Company take additional investigative steps including, without limitation, re-interview of the complaining party and other persons of interest with respect to any complaint, if she deems it appropriate. In addition, if such additional investigative steps do not fully resolve any concerns Kreiter may have regarding the matter, she may take any other investigative actions as she may deem appropriate.

6. Nothing herein shall be interpreted to preclude Dresser from consulting with Kreiter in the course of investigating or taking remedial action or other steps prior to the quarterly review referred to above. Dresser is encouraged to do so so that it can obtain the contemporaneous input and advice of Kreiter in respect of such matters.

B. Hiring Benchmarks

Dresser shall, from and after the Approval Date of the Decree, use best efforts to hire African-American individuals who apply for open positions at its Waukesha, Wisconsin facility at a rate that reflects qualified applicant flow by the job group for that position, and shall work with Kreiter to establish appropriate benchmarks for hiring that reflect African-American

representation in the applicable applicant pool for the surrounding labor market. In order to help establish such benchmarks, Dresser will develop and use a list of recruiting sources and advertising targets that effectively reach potential African-American applicants, provided that for any given job opening, Dresser will retain discretion in choosing recruiting and advertising methods and resources.

C.    Monitoring of Hiring Process

1.    Within ninety (90) days of the Approval Date, the Company shall adopt and implement for its Waukesha, Wisconsin facility written guidelines for its recruiting and hiring procedures and protocols which provides for, inter alia, the receipt, logging, documenting, retaining, and responding to applications for or inquiries regarding open job positions. With Kreiter's assistance, these guidelines shall include a protocol for appropriately identifying the bona fide applicant pool for open positions. The guidelines shall also indicate that informal systems for recruiting and hiring family members and friends of Defendant's workforce are prohibited.

2.    Dresser shall adopt and implement for its Waukesha, Wisconsin facility an applicant tracking data base for the purpose of recording applicant names, whether or not the applicant was interviewed and/or hired, the manager or other individual(s) involved in making the decision to interview and/or hire the applicant, and other information that Dresser and Kreiter may determine to be relevant.

3.    Dresser shall provide Kreiter with applicant tracking data on a quarterly basis for the term hereof and Kreiter may seek backup or further documents or information in respect of any applicant identified on the tracking spreadsheet. With respect to any hiring decisions that in Kreiter's good faith opinion reflect systemic or a pattern of discrimination

against African Americans, Kreiter is authorized to address such conduct and take such steps as authorized by Paragraph 5, below.

4.    During the first year following the Approval Date, Dresser shall on a quarterly basis provide Kreiter with a reasonable number of applications she may select from the complaint tracking data), along with all related documents and information related to Dresser's hiring process with respect to that applicant.

5.    Kreiter will review Dresser's implementation of its hiring process and, where appropriate, may make recommendations to Dresser regarding modifications to that process, including but not limited to re-training managers (individually or as a group) regarding Dresser's equal employment opportunity and diversity goals and initiatives, and alteration of applicant screening and ranking mechanisms in Dresser's applicant screening software. Kreiter will also review Dresser's implementation of measures to facilitate the accurate placement of employees in job classifications and the availability of job-related training on an equitable basis. Kreiter's activities in this regard shall not be limited by the fact of whether hiring is ongoing at any particular time.

6.    Nothing herein shall be interpreted to preclude Dresser from consulting with Kreiter in the course of considering applicants for employment, or from taking remedial action or other steps prior to the quarterly review referred to above. Dresser is encouraged to do so so that it can obtain the contemporaneous input and advice of Kreiter in respect of such matters.

D.   Training, Education and Information

1.   Provided Kreiter does not unduly delay approval of the outside consultant or content of the training, within 180 days of the Approval Date, the Company shall provide at least two hours of equal employment opportunity training to all current non-management Dresser Waukesha employees. This training shall be provided by an outside consultant acceptable to Kreiter. The non-management training shall include, but need not be limited to, communicating the requirements of Title VII; examples of conduct which may be considered race discrimination or harassment, including but not limited to examples of discrimination concerning compensation, promotion, level advancement, and training or cross training; examples of conduct that may be considered retaliation; the discrimination complaint procedure; and other topics that foster equal employment opportunity in hiring, compensation, promotions, and training. Each employee's participation in this training shall be documented and the content and participation will be subject to Kreiter's oversight. New hires shall receive equal employment opportunity training within a reasonable period from their time of hire. During each subsequent year in which the Decree is in effect, the Company shall provide all non-management Waukesha employees at least two hours of equal employment training. Training in subsequent years may be provided either by an outside consultant or Dresser employee(s) acceptable to Kreiter.

2.   Provided Kreiter does not unduly delay oversight, beginning 90 days after the Approval Date, the Company shall initiate the process to provide all current management and supervisory-level employees and all human resources professionals at the Waukesha facility with at least four hours of "supervisor" equal employment opportunity training. This training shall be provided by an outside consultant acceptable to Kreiter, and Kreiter will oversee the content of the training. The management training shall include, but need not be limited to, communicating

the equitable provisions of this Decree; compliance with the Decree; the requirements of Title VII; examples of conduct which may be considered race discrimination or harassment, including but not limited to examples of discrimination concerning compensation, promotion, level advancement, and training; examples of conduct that may be considered retaliation; the discrimination complaint procedure; other topics that foster equal employment in compensation, promotions, and training, including application of the Skills Matrix consistently; instruction related to non-biased decisionmaking, (including, once implemented, any revised personnel system resulting from the Decree); managers' responsibilities under the discrimination complaint procedure; systems or techniques that may be useful in avoiding discrimination and retaliation; and proper record keeping under Title VII. Each management employee's participation in the "supervisor" equal employment opportunity training shall be documented and subject to Kreiter's oversight. New employees with supervisory authority and new human resources managers shall receive this training within a reasonable period from their time of hire. During each subsequent year in which the Decree is in effect, the Company shall provide all management and supervisory-level employees and all human resources professionals at the Waukesha facility with at least two hours of "supervisor" equal employment training. Training in subsequent years may be provided either by an outside consultant or Dresser employee(s) acceptable to Kreiter.

3.     Thirty (30) days prior to the first scheduled EEO training required by Paragraphs XVIII.D.1 and XVIII.D.2 above, Dresser shall provide Kreiter with a copy of the proposed training program, including a copy of all written materials intended to be used or distributed at the training. Kreiter may make recommendations regarding the proposed training

program.  Any disputes between Kreiter and Dresser shall be resolved pursuant to Section XX hereof.

4.      Dresser will also include in its annual evaluation of managers and supervisors at Waukesha criteria to assess manager and supervisor activities with respect to achieving Dresser's diversity goals in and equal employment opportunities for its Waukesha workforce, including participation in the above-described training.

E.      Policy Recommendations.  If Kreiter determines that there are specific identified non-monetary requirements of the Decree that are not being met by Dresser that are covered in the scope of her duties/responsibilities, she shall notify Dresser in writing of such concerns. Within 10 business days of receipt by Dresser of such communication, Kreiter and Dresser shall meet and jointly seek to identify and implement steps to address Kreiter's articulated concerns. If Kreiter concludes after a reasonable period of time that such Decree requirements continue not to be met, then Kreiter may recommend policies, procedures and practices to be developed, modified or implemented by Dresser to remedy the specified and identified non-monetary requirements of this Decree that are not being met.  Kreiter shall do so in writing, specifying the recommended policies and the identified requirement of the Decree which is not being met. Dresser will respond in writing whether it will adopt and implement Kreiter's recommendation within 10 business days of receipt of Kreiter's notice of policy, procedure or practices recommendations.  If it agrees, Dresser shall implement such recommendations within the period Kreiter recommends or Dresser and Kreiter agree upon for implementation thereof.  If Dresser declines, then Kreiter may choose to advise Class Counsel of such matter and they may invoke the dispute resolution provisions of Section XX hereof.

F.    <u>Cooperation</u>.  Dresser shall cooperate with Kreiter in connection with her efforts to undertake and complete her duties in the Decree, including providing her with reasonable and timely access to relevant books, data (including databases), documents, and other sources of information, including interviewing Dresser employees, as well as access to Dresser's Waukesha premises as may be necessary or appropriate to exercise her duties described herein.

G.    Kreiter is authorized in her discretion to communicate with and provide documentation to legal counsel for any of the parties hereto at any time; it being understood, however, that the intent of the parties is that Kreiter and Dresser shall use their best efforts to resolve any dispute, disagreement, or other matter that is the subject of her responsibilities under the Decree without the formal involvement of any counsel, and that consistent with such intent Kreiter and Dresser will to the extent appropriate use the provisions herein for resolution of any concern before formally raising the issue with any counsel.

H.    <u>Compensation</u>

1.    The Company shall compensate Kreiter at her customary hourly rate, or upon other terms agreed upon by the Company and Kreiter.  The Company shall also pay reasonable costs and expenses incurred or caused to be incurred by Kreiter in connection with the performance of her duties under this Consent Decree.  In connection with the performance of her duties under the Decree, Kreiter may retain and use on a reasonable basis the assistance and service of third parties (such as administrative staff, interviewers, and other such assistance) on the subjects that are a part of her duties herein; and further, Kreiter may expend up to Two Thousand Five Hundred Dollars ($2,500.00) per year (or such other amount negotiated with the Company) on input or assistance from any non-party professionals.  Dresser shall promptly, and within a period not to exceed sixty (60) calendar days after issuance of her invoice, pay Kreiter's

and any authorized third party's fees, costs and expenses as permitted hereby which have been certified in writing by Kreiter to have been incurred by her or any staff person or the third party in the performance of her duties under this Consent Decree. Dresser shall indemnify, defend and hold harmless Kreiter with respect to liability for any such costs and expenses she incurs as permitted hereby and for any claims made against her and/or her staff by anyone arising out of or related to her performance of her duties or alleged failure to perform her duties hereunder in the same manner and to the same extent and degree as the indemnification Dresser provides to its officers and directors for claims or actions against them arising out of or related to their duties.

2.  If Dresser has a good faith objection to any item in any bill submitted by Kreiter, Dresser shall attempt to resolve the dispute with Kreiter. If Dresser and Kreiter are unable to resolve the dispute within 10 business days, the dispute shall be subject to the dispute resolution procedures in paragraph XX.

I.  <u>Reporting</u>

1.  Twelve (12) months, twenty-four (24) months, thirty-six (36) months, and, if Dresser is not relieved of the provisions of the Decree pursuant to Paragraph XV.B, forty-two (42) months after the Approval Date, Kreiter shall submit a written report to the Parties regarding the Company's compliance with the Decree. The report shall include the following:

a.  an assessment of whether Dresser has complied with each specific non-monetary term of this Decree;

b.  for each specific term of this Decree that has not been complied with, a statement discussing the reasons for Dresser's failure to implement the required changes;

c.  a discussion of barriers perceived by Kreiter, if any, to the Company's compliance with the Decree;

    d.      a copy, if any, of Kreiter's written recommendations to Dresser to effectuate the purposes of this Decree and the Company's response to those recommendations; and

    e.      any other matter falling within the scope of Kreiter's authority.

2.      The first two such reports (12-month and 24-month) shall be delivered to Magistrate Judge Patrice Gorence and the subsequent reports shall be filed publicly with the Court.

J.     <u>Confidentiality</u>.   Except as communicating with counsel as provided herein, Kreiter and any staff or other authorized person who assists Kreiter shall retain all information supplied by the Company in strict confidence.

K.    <u>Company Reporting</u>

On a semi-annual basis, Dresser shall provide a report to Kreiter and Class Counsel that shall include, but not be limited to, the following information for Waukesha:

1.      A list of all individuals who applied for open positions with Dresser at its Waukesha facility, including the applicant's name, race/national origin, the position for which the individual applied, whether or not the individual was hired, and the manager or other individual(s) who were involved in making the decision whether or not to hire the individual.

2.      A list of employees receiving formal training during the period, including each employee's name, race/national origin, and job position;

3.      A description and copy of any policies or practices modified to implement the Decree.

## XIX. RECORD KEEPING

Upon Preliminary Approval, Dresser shall retain the following employment-related records for Waukesha, Wisconsin only for the Duration of the Decree or as required by state or federal law, whichever is longer:

1. Discrimination Complaint Procedure;

2. Job descriptions for all positions;

3. EEO training plans and program materials;

4. Kreiter's Reports;

5. Internal complaints of discrimination based on race and/or color, and all documents related to the investigation of any such complaints;

6. Performance evaluations of all non-executive level employees;

7. Internal postings of job openings;

8. All documents used in making the selection of Skills Matrix and similar training;

9. Applications or other documents expressing interest by Dresser employees for job openings posted internally; and

10. Documentation of compensation and changes in compensation for all non-executive employees.

## XX. DISPUTE RESOLUTION

A. Unless otherwise provided by the Decree, Judge Patrice Gorence, United States Magistrate Judge for the Eastern District of Wisconsin (or any Magistrate Judge subsequently assigned to this case), shall have exclusive authority to resolve all disputes arising under the

Decree, subject to the various limitations on enforcement, and to the pertinent enforcement standards, as set forth in this Decree. Nothing herein shall be interpreted to preclude Kreiter and Dresser from resolving matters informally at any time.

B.     Kreiter may bring to the attention of Class Counsel and/or Dresser any issue that falls within the scope of her duties that has not been resolved informally by her and Dresser after a good faith effort to do so. If Kreiter invokes this provision, then at the request of Class Counsel or Dresser, Class Counsel and Dresser shall confer as necessary, and the parties shall use their best efforts to resolve promptly any differences or any disputes regarding the interpretation or implementation of the Decree.

C.     Class Counsel or Dresser shall have the right to file a motion with the Court to resolve any dispute or issue of compliance hereunder including any matter raised by Kreiter, subject to the same enforcement limitations and standards set forth herein. The procedure for resolution of such issues shall be as follows:

1.     If Class Counsel or Dresser has good reason to believe that a legitimate dispute has been raised, the initiating party or parties shall promptly give written notice to the other party or parties, including:

        a.     a reference to all specific provisions of the Decree that are involved;

        b.     a specific statement of each issue;

        c.     a statement of the remedial action sought by the initiating party, and

        d.     a brief statement of the specific facts, circumstances and any other arguments supporting the position of the initiating party.

2.      Within fifteen days after receiving such notice, the non-initiating party or parties shall respond in writing to the statement of facts and argument set forth in the notice and shall each provide its written position, including the facts and arguments upon which it relies in support of its position.

3.      Class Counsel and Dresser shall undertake good-faith negotiations, which should include a meeting by telephone or in person and the exchange of relevant documents and/or other information, to attempt to resolve the issue(s) in dispute.

4.      Judge Gorence, upon motion, may permit either Class Counsel or Dresser to take limited discovery pursuant to the Federal Rules of Civil Procedure, but only as to clearly relevant and necessary documents and/or witnesses, as relates to the disputed issue(s), if the Judge determines that the informal exchange of documents or information has not been sufficient to allow either Class Counsel or Dresser to present the dispute upon a factual record adequate for the determination required hereunder.

5.      If good-faith efforts to resolve the matter have failed, and after written notice of "impasse" to the non-initiating party or parties, Class Counsel or Dresser may file a motion with the Court, with a supporting brief, requesting resolution of the dispute, provided, however, that such motion shall be limited to the dispute(s) and/or issue(s) as to which the "meet and confer" provisions herein have been exhausted.

6.      The non-moving party or parties will have fifteen days to respond to any such motion.  Reply pleadings to such response are permitted only by consent of the opposing party or by specific leave of the Court.

7.     Judge Gorence shall, after the filing of the final brief, resolve the dispute and may schedule a hearing or other proceeding, which any party may attend telephonically unless otherwise ordered by the Judge, to resolve the matter.

D.     The provisions of this Section do not prevent Class Counsel or Dresser from promptly bringing an issue before Judge Gorence when exigent facts and circumstances require immediate Court action to prevent a serious violation of the terms of this Decree, which otherwise would be without meaningful remedy.  The moving papers shall explain the facts and circumstances that allegedly necessitate immediate action by the Judge.  If any such matter is brought before the Judge requesting immediate Court action, the opposing party or parties shall be provided with appropriate actual notice, and an opportunity to be heard in opposition to the motion, pursuant to the Local Rules of the Court and the Federal Rules of Civil Procedure.  The Judge, in her discretion, may set such procedures for emergency consideration as are appropriate to the particular facts and circumstances, but no such matter may be conducted on an *ex parte* basis.

E.     Only Class Counsel or Dresser shall have standing to move the Court to enforce, apply, or modify this Decree.

F.     In the event that any party seeks to utilize the dispute resolution procedure set forth in Section XX, then the prevailing party in such matter shall be entitled to recover reasonable attorneys' fees, costs and expenses incurred in such.

## XXI.   COSTS OF IMPLEMENTATION OF DECREE

The Company agrees to pay Lead Class Counsel or other attorneys in her firm at their hourly rates for reasonable attorney's fees, litigation expenses and costs for work performed in the course of the enforcement of this Decree up to Twenty Thousand Dollars ($20,000.00)  If

Lead Counsel believes that additional fees or expenses are required to meet her duties hereunder, at least seven (7) days in advance of incurring over $20,000 in fees, she will notify counsel for Defendant, and thereafter, she may have such issue resolved pursuant to Section XX hereof (but not any work under the Dispute Resolution Process, which is subject to the prevailing party provisions in Paragraph XX.F).

## XXII. MISCELLANEOUS PROVISIONS

A.    Computation of Time Periods.    In computing any period of time prescribed or allowed by this Decree, unless otherwise stated, such computation shall be made consistent with the Federal Rules of Civil Procedure.

B.    Counterparts.    This Decree may be executed in one or more counterparts, and each executed copy shall be deemed an original which shall be binding upon all parties hereto.

C.    Persons Bound By Decree.    The terms of this Consent Decree are and shall be binding upon the Parties, and upon all of their present and future representatives, agents, directors, officers, assigns and successors (partial or complete).    Dresser agrees that, in the event of a sale, transfer or merger of the Company or the sale or transfer of substantially all of its assets in Waukesha to a purchaser or successor, Dresser will notify the purchaser or successor of the terms of the Decree prior to the sale or transfer, and shall obtain the agreement of the purchaser or successor to adhere to the terms of the Decree.

D.    Construction.    The terms of this Decree are the product of joint negotiations and shall not be construed as having been authored by one party rather than another.

E.    Integration.    This Decree constitutes the entire agreement among the Parties with respect to the matters discussed herein and it supersedes all negotiations, representations, comments, contracts, and writings prior to the date of this Consent Decree.

F.　　Modification.　No waiver, modification or amendment of any provision of this Decree shall be effective unless made in writing, approved by Class Representatives in the Reed Action and Dresser and approved and ordered by the Court.

G.　　Severability.　Whenever possible, each provision and term of this Decree shall be interpreted in such a manner as to be valid and enforceable; provided, however, that in the event any provision or term of this Decree should be determined to be or rendered invalid or unenforceable, all other provisions and terms of this Decree shall remain in force.　If application of any provision or term of this Decree to any person or circumstance should be determined to be invalid or unenforceable after Final Approval, the application of such provision or term to other persons and circumstances shall remain in force.

H.　　Notices.　Except as may be otherwise provided for in this Decree, all notifications, reports and communications to the parties required under this Decree shall be sufficient as hand-delivered, sent by first class mail or electronically transmitted to the following persons:

For Plaintiff Class
Jennifer K. Soule
Soule, Bradtke & Lambert
155 North Michigan Avenue
Suite 500
Chicago, Illinois 60601

For Defendant
Craig R. Thorstenson
Ford & Harrison LLP
55 E. Monroe Street
Suite 2900
Chicago, Illinois 60603

Whenever Kreiter is to communicate formally with Dresser, she is to notify:

Cynthia A. Boeh
Associate General Counsel
Dresser, Inc.
Dresser Waukesha
1101 W. St. Paul Avenue
Waukesha, WI 53188

**IT IS SO ORDERED** this ___23___ day of ___Sept___, 2010.

BY THE COURT:

_____
Judge Lynn Adelman
United States Judge

BY CONSENT:

FOR PLAINTIFFS

Jennifer Soule, Esq.
SOULE, BRADTKE & LAMBERT
155 N. Michigan Avenue, Suite 500
Chicago, IL 60601

FOR DEFENDANT

Craig R. Thorstenson
FORD & HARRISON LLP
55 East Monroe Street – Suite 2900
Chicago, Illinois 60603